Exh 6



**After printing this label**:

1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BOARD OF IMMIGRATION APPEALS**

## Payment Receipt

A payment has been processed for the following Board of Immigration Appeals (BIA) case. Please contact the BIA Clerk's Office for questions regarding this payment at (703) 605-1007.

You must include a copy of this receipt in the appeal or motion package you are filing with the BIA Clerk's Office. Failure to include a receipt showing proof of payment will result in rejection of the appeal or motion.

**A-Number:**    031-257-320

**Payment Tracking ID:**  27DH0667

**Payment Processed On:**  4/11/2024 10:15:31 AM EST

**Filing Type:**  BIA Motion

**Payment Type:**  PLASTIC_CARD

**Payment Amount:**  $110.00

Save or print your receipt immediately. You will not receive a copy of your receipt via email. The tracking ID is required to retrieve a duplicate receipt.

Olivia Abrecht, Staff Attorney
National Immigrant Justice Center
111 W. Jackson Blvd, Suite 800
Chicago, Il 60604
*Attorney for Respondent*


## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## BOARD OF IMMIGRATION APPEALS
## FALLS CHURCH, VIRGINIA

| | |
|---|---|
| In the Matter of: | |
| Panton, Robert Savio | No. A031-257-320 |
| *Respondent* | |
| In Removal Proceedings | |


**RESPONDENT'S MOTION TO REOPEN AND REMAND PROCEEDINGS**

# TABLE OF CONTENTS

I. PROCUEDURAL HISTORY ................................................................................. 2

II. STATEMENT OF FACTS ................................................................................... 3

  A.  In 1991, Mr. Panton Was Shot and Suffered Life-Threatening Injuries ..................................... 4

  B.  Mr. Panton's Incarceration Ignited in Him a Lifelong Quest for Personal Development and Community Involvement, Which Ultimately Resulted in his Early Release from his Sentence ...... 5

  C.  Today, Mr. Panton Works Tirelessly to Make Amends in Harlem and is a Respected Community Leader ...................................................................................................... 6

III. STATEMENT OF LAW ..................................................................................... 8

  A.  Respondent Merits Reopening of His Removal Proceedings under INA § 240(c)(7) ............... 8

    1. Respondent's Motion Merits Equitable Tolling ................................................... 10

    2. Respondent's Motion to Reopen Based on New, Material Evidence of Relief Is Consistent with EOIR Guidance and BIA Precedent ................................................... 10

      a) Respondent Has Demonstrated Prima Facie Eligibility for U-Non-Immigrant Status 11

      b) Respondent Is Likely to Be Granted A Waiver of Inadmissibility by an Immigration Judge ........................................................................................ 13

      c) A Grant of a Waiver of Inadmissibility by the Immigration Judge Will Materially Impact the Outcome of Mr. Panton's Proceedings .......................................... 15

      d) Respondent Has Been Diligent in Seeking Collateral Relief and the Timing of His Motion to Reopen Is Appropriate ........................................................... 16

      e) DHS' Position on the Motion .......................................................... 17

      f) Reopening Mr. Panton's Case Is in the Interest of Administrative efficiency. ............. 17

  B.  In the Alternative, Respondent Merits Sua Sponte Reopening of His Removal Proceedings . 17

IV. CONCLUSION ........................................................................................... 18

i

# TABLE OF AUTHORITIES

**Cases**

*Dada v. Mukasey*, 554 U.S. 1 (2008) ..................................................................................8

*Holland v. Florida*, 560 U.S. 631 (2010) ..........................................................................10

*Kucana v. Holder*, 558 U.S. 233(2010) ..............................................................................8

*L-D-G- v. Holder*, 744 F.3d 1022 (7th Cir. 2014) .......................................................1, 18

*Matter of Beckford*, 22 I&N Dec. 1216 (BIA 2000) .........................................................18

*Matter of J-J-*, 21 I&N Dec. 976 (BIA 1997) ...................................................................17

*Matter of L-A-B-R,* 27 I&N Dec. 405 (A.G. 2018) ...........................................................11

*Matter of L-N-Y,* 27 I&N Dec. 755 (BIA 2020) ..........................................................16, 17

*Matter of L-O-G*, 21 I&N Dec. 413 (BIA 1996) .................................................................8

*Matter of Peleayz,* No. AXXX XX4 106, 2017 WL 7660455 3 (BIA Oct. 24, 2017) ..................9

*Matter of Sanchez-Sosa,* 25 I&N Dec. 807(BIA 2012) ........................................................9

*Matter of Sanchez-Sosa,* 25 I&N Dec. 807, 815 (BIA 2012) ..............................................10

*Matter of Y-A-L-L-*, AXXX XXX 594 2, 2 (BIA Oct. 29, 2015) ..........................................9

*Panton v. Garland*, No. 21-2346, 2023 WL 4027534 (7th Cir. June 15, 2023) ...........................2

*Pervaiz v. Gonzales*, 405 F.3d 488 (7th Cir. 2005) ............................................................10

*Reyes Mata v. Lynch*, 576 U.S. 143(2015) ..........................................................................8

Robert Savio Panton, A031-257-320 (BIA, Mar. 30, 2021) .................................................2


**Statutes**

INA § 101(a)(15)(U) ...........................................................................................................11

INA § 212(a)(9)(A) .............................................................................................................15

INA § 212(a)(9)(B)(i)(II) .....................................................................................................15

INA § 212(d)(14) .................................................................................................................16

INA § 237(d)(1) ...................................................................................................................16

INA § 240(c)(7)(C)(i) .............................................................................................................9

NYPL § 120.05 ..............................................................................................................11, 12

NYPL § 125.00 ..............................................................................................................11, 12


**Regulations**

8 C.F.R. § 214.14 ................................................................................................................11

8 C.F.R. § 1003.2(a) ............................................................................................................17

8 C.F.R. § 1003.2(c)(1) .........................................................................................................8

8 C.F.R. § 1003.2(c)(3)(iii) ....................................................................................................1

8 C.F.R. § 1003.23(b)(3) .....................................................................................................8,9

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**OFFICE OF THE IMMIGRATION JUDGE**
**ARLINGTON, VIRGINIA**

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| | ) |
| Panton, Robert Savio | )    Motion to Reopen Proceedings |
| A031-257-320 | ) |
| | ) |
| *In Removal Proceedings* | ) |
| | ) |

MOTION TO REOPEN AND REMAND PROCEEDINGS

Respondent Robert Savio Panton (hereinafter "Robert" or "Mr. Panton"), a fifty-eight-year-old father and grandfather, who has resided in the United States since he was four years old, respectfully asks this Court to reopen and remand proceedings to permit adjudication of a waiver of inadmissibility under *L-D-G- v. Holder*, 744 F.3d 1022 (7th Cir. 2014). *See* 8 C.F.R. § 1003.2(c)(3)(iii). Mr. Panton's pending application for U non-immigrant status is new, material evidence of relief that was not previously available to the Respondent during his proceedings. Mr. Panton's motion merits equitable tolling as he has been diligent in pursuing relief and submits this motion to reopen just 85 days since receiving the United States Citizenship and Immigration Services (USCIS) receipt notice for Form I-918, Application for U non-immigrant status and within 9 days of receiving a final response from DHS regarding prosecutorial discretion. Ex F (USCIS I-918 Receipt Notice); Ex I (DHS Response to PD Request).[1] In the alternative, Mr. Panton merits *sua sponte* reopening of his proceedings because he has

---

[1] Respondent is still waiting for a receipt notice from USCIS for Form I-192, Application for Advance Permission to Enter as a Nonimmigrant. Because the receipt notice has not arrived within a reasonable period of time, Respondent now files this Motion to Reopen and can update the court upon receipt of the notice from USCIS.

demonstrated his prima facie eligibility for relief and his numerous positive equities confirm he merits an exercise of discretion.

## I.    PROCUEDURAL HISTORY

Robert Panton, a national of Jamaica, was admitted to the United States as a lawful permanent resident in 1970 at only 4 years old. *See* Ex. 1 (NTA). Fifty years later, in August 2020, Mr. Panton was detained by Immigration and Customs Enforcement and held at Boone County Jail, in Kentucky. His removal proceedings were venued with the Chicago Immigration Court. On January 27, 2021, Mr. Panton received a final order of removal from Immigration Judge Samuel B. Cole based on a single aggravated felony conviction from 1994. Robert Savio Panton, A 031 257 320 (Jan. 27, 2021) (copy of Removal Order attached at Ex. A). Immigration Judge Cole denied Mr. Panton's application for deferral of removal under the Convention Against Torture. *Id.* Mr. Panton unsuccessfully appealed his case to the Board of Immigration Appeals and to the U.S. Court of Appeals for the Seventh Circuit. Robert Savio Panton, A031-257-320 (BIA, Mar. 30, 2021); *Panton v. Garland*, No. 21-2346, 2023 WL 4027534 (7th Cir. June 15, 2023). Mr. Panton was granted two consecutive stays of removal in 2021 and 2022 by Immigration and Customs Enforcement. Ex. C at 152-154 (U Visa Application Exhibit H, Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) Stays of Removal).

During his removal proceedings, Mr. Panton requested certification from the New York Police Department (NYPD) for an application for U nonimmigrant status on December 18, 2020 in the midst of the COVID-19 pandemic. Ex. B (Request for Certification). Three years later, NYPD certified Mr. Panton on December 11, 2023, after removal proceedings had concluded. Ex. C at 53-57 (U Visa App, Form I-918, Supplement B). Mr. Panton promptly filed an

application for U nonimmigrant status and waiver of inadmissibility with USCIS on December 21, 2023. *See generally* Ex. C. Thereafter, on January 10, 2024, he was granted deferred action by ICE ERO, which expires on September 27, 2024. Ex. D (Grant of Deferred Action). Respondent received a receipt notice from USCIS for the application for U nonimmigrant status on January 17, 2024. *See* Ex. F (USCIS Receipt Notices). Respondent promptly filed a request for prosecutorial discretion in the form of a joint motion to reopen proceedings with ICE OPLA on February 5, 2024, and escalated the request for a joint motion for ICE OPLA supervisory review on March 1, 2024. Ex. G (Cover Letter of Request for Prosecutorial Discretion); Ex. H (Email Requesting Supervisory Review of Denial of Prosecutorial Discretion), Ex I (DHS Response to PD Request). Respondent now files a motion to reopen proceedings so that an immigration judge may adjudicate a waiver of inadmissibility under *L-D-G- v. Holder*, 744 F.3d 1022 (7th Cir. 2014).

## II.     STATEMENT OF FACTS

Mr. Robert Savio Panton is a fifty-eight-year-old father, grandfather, and youth mentor living in Harlem, New York. Ex. C at 157 - 169 (U Visa App Ex. I, Mr. Panton's Decl.). Although born in Kingston, Jamaica, in 1965, Robert came to the United States at only four years old as a lawful permanent resident on October 28, 1970. *Id* at 159. His mother Gloria raised him and his three U.S. Citizen sisters on her own in Harlem. *Id.* As a teenager, Robert had a talent for boxing and was bestowed the boxing name "Bob Lemon" after the baseball player. *Id.* In his early twenties he suffered devastating injuries that ended his boxing career. *Id.* He began working as a boxing trainer at a local gym and, in 1988, he met a man named George Rivera. *Id* at 160. Mr. Rivera hired Robert to train him and also offered Robert a second job– holding money for Rivera's street-level drug distribution location. *Id.* Although Robert did not

sell the drugs and did not know how large of an enterprise George was operating, he now deeply regrets his decision to become involved in any capacity. *Id.* In 1989, Mr. Rivera was arrested and indicted alongside 32 other individuals on federal charges of conspiracy to distribute heroin. *Id.* Robert was not among those arrested at the time. *Id.* Robert moved on with his life, focusing on his responsibilities as a young father and attending classes at a community college. *Id.* Robert is a father to Aaron Jenkins, born in 1985, Dajon Panton, born in 1989, and Shamecca Panton, born in 1990. *Id.*

### A.  In 1991, Mr. Panton Was Shot and Suffered Life-Threatening Injuries.

On January 10, 1991, Robert was shot twice while walking near 123rd Street and 2nd Avenue in New York City. *Id* at 161. He believes the man who shot him targeted him out of a mistaken belief that he had cooperated with police to avoid arrest. *Id.*  He was taken to Metropolitan Hospital "in serious condition". *Id* at 177 (U Visa App. Ex. K, Incident Report). The NYPD has certified that Mr. Panton is the victim of the qualifying crimes of Attempt to Commit Murder and Felonious Assault and that he was helpful to the officials in the investigation. *Id* at 53-57 (U Visa App, Form I-918B, dated Dec. 11, 2023). In fact, despite being in and out of consciousness, Robert spoke with officers at the scene of the shooting and, once his condition stabilized, he spoke with detectives again at Metropolitan Hospital. *Id.* at 161-62, 177 (U Visa App. Ex. K, I). Mr. Panton suffered severe physical, mental, and emotional injuries as a result of the shooting. *Id* at 161-167. He was hospitalized for approximately three weeks and required a number of surgeries to extract bullets, repair his bladder, and take a skin graft to repair his face. *Id.* His sister Grace thought he was "a goner". Ex. C at 172 (U Visa App. Ex. J, Dec. of Grace Carrington). Mr. Panton struggles to this day with Post-Traumatic Stress Disorder and anxiety as a result of the shooting. *Id*. at 163 (U Visa App. Ex. I). Mr. Panton was arrested while

recovering at the hospital for his past role in Mr. River's drug business. *Id.* In 1992, Mr. Panton was convicted in the Southern District of New York of one count of conspiring to distribute and possess with intent to distribute more than a kilogram of heroin between April 1988 and May 1989 in violation of 21 U.S.C. §§ 821, 841(a)(1), and 841(b)(1)(A). *Id* at 112 (U Visa App. Ex. D, Original Disposition). In 1994, at the height of the War on Drugs, under draconian sentencing guidelines that have since been repealed, Robert was sentenced to life in prison. *Id*. His sentence would be significantly lower today due to subsequent criminal justice reforms. *See* U.S. Sentencing Commission Guidelines Manual (2023) at 2.[2]

### B. Mr. Panton's Incarceration Ignited in Him a Lifelong Quest for Personal Development and Community Involvement, Which Ultimately Resulted in his Early Release from his Sentence.

After spending 30 years in prison, in August 2020, sentencing reforms permitted Judge Preska of the Southern District of New York to release Robert, reducing his sentence to time served plus one week. *See* Ex. C at 117-142 (U Visa App. Ex. E, United States v. Panton, No. 89 Cr. 346 (S.D.N.Y. Aug. 4, 2020)). She found that releasing Robert would "avoid sentencing disparity" and that Robert had demonstrated "exceptional and compelling circumstances" warranting his release from prison. *Id.* at 139. Importantly, she found that there was "no doubt" he had fully rehabilitated himself and "no need for further incarceration to protect the public." *Id.* She observed that while incarcerated, Robert had taken advantage of "every opportunity to improve himself and to prepare for a law-abiding, productive life." *Id.*

Robert's commitment to self-improvement began even before his sentencing. In 1993, he started taking educational courses, including a 500-hour drug education course. He eventually completed more than 20 courses—learning subjects ranging from creative writing to emotional intelligence. *Id. at* 234-261 (Ex. DD, Certificates). He obtained diplomas in Civil Litigation

---

[2] Available at: https://www.ussc.gov/sites /default/files/pdf/guidelines-manual/2023/GLMFull.pdf.

Studies and The Professional Paralegal Program from The School of Paralegal Studies. *Id.* Robert found a passion for creative writing and wrote a number of screenplays over the years. One of his screen plays*, Can You Cross Over?* was selected as a finalist for a competition by the Organization of Black Screenwriters in 2004. Ex. C at 262 (U Visa App Ex. EE). Over the years, Robert increasingly took on leadership positions within the prison, serving as a law library clerk, creative writing teacher, mentor, and Imam to other incarcerated individuals. Ex. C at 164 (U Visa App Ex. I); *Id* at 230 (U Visa App. Ex. BB,  Letter of Support from Tyrone Ward). While United States Penitentiary Atlanta, Robert helped launch the "Slow Down Program", which provided mentoring to youth at risk of imprisonment in coordination with the juvenile courts. *Id.* While serving as a mentor in the program, Robert was confided in by a sexually abused teenager. Robert encouraged her to report the crime and seek help. Ex. C at 140 (U Visa App Ex. E). His recognized leadership in the facility was such that wardens relied on him to help intervene when conflicts arose and called upon him. Ex. C at 164 (U Visa App Ex. I).

During his incarceration, Mr. Panton also maintained strong relationships with his sisters and his children. Ex. C at 216-228 (U Visa App Exs. W-AA, Family Letters of Support). In particular, his son, NYPD Officer Dajon Panton credits Mr. Panton with "guid[ing] me to a beautiful career in law enforcement" and considers his dad to be role model. *Id* at 217 (U Visa App. Ex. W). Upon Mr. Panton's release from prison, instead of returning to his family, he was detained by Immigration and Customs Enforcement and placed in removal proceedings in August 2020. Ex 1 (NTA). He was subsequently released by ICE in 2021 and granted a stay of removal. Ex C at 153 (U Visa App Ex. H).

> **C. Today, Mr. Panton Works Tirelessly to Make Amends in Harlem and Is a Respected Community Leader.**

Since returning to Harlem, Mr. Panton has recognized that "being regretful is not enough. You have to make reparations, in the same place you polluted." Ex C at 158 (U Visa App Ex. I). Mr. Panton has dedicated himself to youth mentorship. In 2021, Mr. Panton launched a campaign called "Too Young to Die" alongside Poet Laureat Mahdi Salam. His dream is "that [young people] do not have to go to jail to realize how they are hurting themselves and the people around them like I did." *Id* at 166. As part of his work, Mr. Panton operates a suicide prevention hotline, volunteers at SCAN-Harbor's after school programming, and is a guest speaker at community events. *Id; see generally* Ex. C at 185-223 (U Visa App Exs. M-CC, Letters of Support from Family, Mentees, and Community Leaders). In the summer of 2022, Mr. Panton, designed and ran a summer program for teenage youth in collaboration with Lead by Example Reverse the Trend, a community organization in Harlem. *Id* at 209 (U Visa App Ex. T, Letter of Support by Antonio Hendrickson). The following summer, he ran a summer internship program at Urban Homeownership Corporation to provide youth in Harlem with job readiness skills. *Id* at 211-212 (U Visa App Ex. U, Letter of Support by Sheila Davis Dotson). Two of those young men were later hired by Urban Homeownership Corporation to permanent positions. *Id.* For his work in community he was awarded the Community Warrior Award in 2023 by Brown Eyez Magazine, Holistic Harlem, and African Immigrants Commission of NY & CT, Inc. Ex. C at 264 (U Visa App. Ex. EE). Finally, Mr. Panton's work has garnered him the support of dozens of local and national NGO and civil society organizations as well as elected officials, namely U.S. Reps. Adriano Espaillat (NY-13) and Jerrold Nadler (NY-14). Ex C at 188-202 (U visa App. Exs. N-Q).

In addition to his work in his community, Mr. Panton is committed to making up for lost time with his children and grandchildren. *Id.* at 166 (U Visa App Ex. I). His son NYPD Officer

Dajon Panton lives near Mr. Panton and recently had his first child. Mr. Panton's daughter Shamecca Panton lives in Atlanta, Georgia, with her young daughter, but visits her father in New York often. *Id* at 220 ( U Visa App Ex. X, Letter of Support by Shamecca Panton). Shamecca has struggled with mental illness throughout her life. *Id.* If Mr. Panton were able to stay in the United States long term, she would move to New York to benefit from his assistance. *Id.* Mr. Panton also maintains close relationships with his oldest son Aaron, who lives in North Carolina, and his three sisters, Greta, Grace, and Kandi. Ex C (U Visa App. Exs. H, Y, Z, AA). Mr. Panton's sister Grace writes in a declaration, "I pray that my brother is allowed to stay in the only country he has ever known. Not only for Robert's sake, but for the sake of our entire family who has lost almost 3 decades of time with our loving brother, father…". *Id* at 174 (U Visa App. Ex. J).

### III.    STATEMENT OF LAW

#### A.    Respondent Merits Reopening of His Removal Proceedings Under INA § 240(c)(7).

A "motion to reopen is an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings." *Kucana v. Holder*, 558 U.S. 233, 242 (2010) (quoting *Dada v. Mukasey*, 554 U.S. 1, 18 (2008)). Noncitizens have a statutory right to file one motion to reopen their case. *See Reyes Mata v. Lynch*, 576 U.S. 143, 145 (2015); *Dada*, 554 U.S. at 4-5. A motion to reopen may be granted under INA § 240(c)(7) based on new evidence that is material, was not available and could not have been discovered or presented at the hearing. *See* 8 C.F.R §1003.23(b)(3). Further, a Respondent may file a motion to reopen to apply for discretionary relief from deportation. *See Matter of L-O-G*, 21 I&N Dec. 413 (BIA 1996), 8 C.F.R. §§ 1003.2(c)(1); 1003.23(b)(3). Although the Board has discretion, reopening is appropriate where

"new facts alleged, together with the facts already of record, indicate a reasonable likelihood of success on the merits". *Matter of L-O-G*, 21 I&N Dec. 413 (BIA 1996).

Here, Respondent's pending application for U nonimmigrant status is new, material evidence of relief from deportation that was not previously available during Respondent's removal proceedings. Although Mr. Panton originally requested certification from the NYPD in December 2020, during the COVID-19 pandemic, he did not receive the requisite certification until December 2023. As such, this form of relief was not available during his removal proceedings. With a pending application for U nonimmigrant status, he is eligible for a waiver of inadmissibility. Under *L-D-G v. Holder*, an Immigration Judge in the Seventh Circuit may grant a waiver following a hearing. Reopening and remanding his case would permit Mr. Panton the opportunity to seek a waiver from the Immigration Judge, which was not previously available to him during his proceedings. Mr. Panton's pending application for U non-immigrant status is therefore new, material evidence that merits reopening of his removal proceedings. *See Matter of Peleayz,* No. AXXX XX4 106, 2017 WL 7660455 3, 3 (BIA Oct. 24, 2017)(applying *Matter of Sanchez-Sosa,* 25 I&N Dec. 807(BIA 2012) and holding that reopening was warranted in light of "new and previously unavailable documentary evidence concerning the respondent's application for nonimmigrant U visa status" and would allow the respondent "to request a continuance or administrative closure of these proceedings" while his application was adjudicated by USCIS)[3]; *Matter of Y-A-L-L-*, AXXX XXX 594 2, 2 (BIA Oct. 29, 2015)(granting a motion to reopen because the respondent was "awaiting final adjudication of her application" for U non-immigrant status).[4]

---

[3] available at https://www.scribd.com/document/365695330/Augustine-Peleayz-A208-934- 106-BIA
[4] available at https://www.scribd.com/document/290079091/Y-A-L-L- AXXX-XXX-594- BIA-Oct-29-2015

<u>1. Respondent's Motion Merits Equitable Tolling</u>

Generally, a motion to reopen must be filed within 90 days of the entry of the date of the entry of a final administrative order of removal. INA § 240(c)(7)(C)(i); 8 C.FR § 1003.23(b)(3). However, equitable tolling is appropriate where the respondent acted diligently in pursuing their rights. *See, e.g.*, *Holland v. Florida*, 560 U.S. 631 (2010); *Pervaiz v. Gonzales*, 405 F.3d 488 (7th Cir. 2005). Here, Respondent acted diligently to pursue relief based on U non-immigrant status. Although Mr. Panton was the victim of the qualifying crime in 1991, he did not need to apply for U non-immigrant status at that time because he was a lawful permanent resident. Once in removal proceedings in 2020, he sought certification from the New York Police Department. Ex. B. Upon receiving certification from NYPD on December 11, 2023, Mr. Panton promptly filed an application for U nonimmigrant status and requested a waiver of inadmissibility on December 22, 2023. Ex C. Mr. Panton immediately sought prosecutorial discretion from the Department of Homeland Security (DHS) on February 5, 2024. Ex. G. He then escalated the request to the Office of the Principal Legal Advisory chief counsel on March 1, 2024, consistent with DHS policy. Ex. H. He now files this motion to reopen, within 9 days of DHS completing a review of his request for prosecutorial discretion. Ex. I. He has therefore exercised due diligence to bring forth this new relief.

2. <u>Respondent's Motion to Reopen Based on New, Material Evidence of Relief Is Consistent with EOIR Guidance and BIA Precedent.</u>

Executive Office of Immigration Review (EOIR) guidance and Board of Immigration Appeals (BIA) precedent supports reopening in this case. First, EOIR guidance during the Trump administration that severely curtailed the ability of respondents, including Mr. Panton, to reopen and continue removal proceedings for collateral relief has been rescinded. *See* Cancellation of Policy Memoranda 19-05, 21-06, and 21-13, effective Apr. 18, 2022. Subsequent EOIR guidance

reaffirms a necessary balance between "efficiency and fairness" and encourages administrative closure of cases to allow respondents to pursue collateral relief. *See* EOIR Policy Memo 21-25. This guidance is inline with *Matter of Sanchez Sosa,* which established that "[a]s a general rule, there is a rebuttable presumption that an alien who has filed a prima facie approvable [U visa petition] with the USCIS will warrant a favorable exercise of discretion for a continuance for a reasonable period of time." 25 I&N Dec. 807, 815 (BIA 2012). *Matter of L-A-B-R* further instructed Immigration Judges and the BIA to consider certain factors in assessing "good cause" to continue proceedings to accommodate "a collateral matter". 27 I&N Dec. 405 (A.G. 2018). The primary factors to consider are 1) the likelihood that the Respondent will receive collateral relief and 2) whether the relief will materially impact the outcome. *Id.* The secondary factors to consider are 1) the Respondent's diligence in seeking collateral relief, 2) DHS position on the motion, 3) concerns of administrative efficiency, 3) the length of continuance requested, 4) the number of hearings held and continuances granted previously, and 5) the timing of the motion to continue. Here each factor supports reopening Mr. Panton's case. *Id.*

> **a) Respondent Has Demonstrated Prima Facie Eligibility for U-Non-Immigrant Status.**

Mr. Panton's application for U non-immigrant status and significant supporting documentation demonstrates his prima facie eligibility for U Nonimmigrant status pursuant to INA §101(a)(15)(U) by establishing: (1) he was the victim of the qualifying crimes of attempt to commit murder and felonious assault; (2) he has suffered significant physical, mental and emotional harm as a result of these crimes; (3) he possess information regarding the qualifying criminal activity; (4) a Federal, State, or local government official who prosecuted the criminal activity certifies that Mr. Panton has been, is being, or is likely to be helpful to the officials in the investigation or prosecution of the criminal activity; and (5) the criminal activity violated the

laws of the United States and occurred in the United States. *See* INA § 101(a)(15)(U); 8 C.F.R. § 214.14 et al.

First, as evidenced by the NYPD Incident Report, Mr. Panton was the victim of Attempted Homicide under New York Penal Law (NYPL) § 125.00 and Assault in the Second Degree under NYPL § 120.05 in the United States. *See* Ex. C at 177-179 (U Visa App. Ex. K, Incident Report). Both crimes are clearly qualifying crimes for purposes of an application for U non-immigrant status. The INA list of criminal activity that qualifies a victim for U nonimmigrant status includes "murder" or "attempt", "felonious assault" and "any similar activity in violation of Federal, State, or local criminal law" (emphasis added). INA § 101(a)(15)(U)(iii). First, Attempted Homicide from a shooting clearly fits within the qualifying crime of Attempt to commit Murder. *See* NYPL § 125.00 at Ex. C at 181(U Visa App. Ex. L). Second, in New York, Assault in the Second Degree is a Class D felony that is in relevant part is defined as:

> "*With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument....*"

*See* NYPL § 120.05. Therefore, given the nature of the attack that Mr. Panton suffered and the elements of Assault in the Second degree under the New York Penal Law, Mr. Panton was the victim of the qualifying crime of both Attempt to Commit Murder and Felonious Assault *or* similar activity under INA § 101(a)(15)(U)(iii).

Second, Mr. Panton clearly suffered significant physical, mental and emotional harm as a result of these crimes. Ex. C (U Visa App, Ex. I). In addition to the immediate life-threatening injuries he sustained from two bullets that his face and hip, which required multiple surgeries, Mr. Panton continues to suffer from ongoing physical ailments because of the shooting and from

Post-Traumatic Stress Disorder, for which he had to receive treatment. *Id* at 162-163. Third, as evidenced by the incident report, Mr. Panton possesses information regarding the crime and shared this information with officers. Ex. C at 177-179 (U Visa App, Ex. K). Finally, the New York Police Department certified him as a victim of a qualifying crime. Ex. C at 53. Mr. Panton has established prima facie eligibility for U nonimmigrant status.

### b) Respondent is Likely to Be Granted a Waiver of Inadmissibility by an Immigration Judge

Respondent merits a waiver of inadmissibility for his conviction as he has demonstrated full rehabilitation and a deep commitment to community service. Respondent's application for a waiver of inadmissibility includes extensive evidence supporting an exercise of discretion. *See generally* Ex. C. In particular, it includes 1) a robust declaration from the respondent, 2) letters of support from his sisters and children, 3) letters of support from local community leaders in Harlem, 4) letters of support from mentees of Mr. Panton, 5) evidence of awards and certificates, 6) support from elected officials, and finally, 7) support from the original prosecutor in his criminal conviction. *Id.*

First and foremost, Mr. Panton accepts full responsibility for his role in the sale of drugs in his community in the 1980s. He writes in his declaration,

> The fact that I profited on the destruction of other lives was hard to reckon with and it has stayed with me since…. I had seen the harms of addiction in my community especially with crack cocaine, but I was desensitized and tempted by money…. Today, thirty years later, I teach the lessons I have learned to young people so they can learn from my mistakes instead of making bad decisions like I did as a young man. That is my calling."

Ex. C at 161 (U Visa App Ex. I). The prosecutor in Mr. Panton's criminal case, Henry DePippo, wrote in a letter of support for a presidential pardon,

> "[i]n light of Mr. Panton's acceptance of responsibility and expression of remorse and his continued positive trajectory since his release, I support Mr. Panton's

application for a pardon. In particular, I personally see no reason to deport Mr. Panton to Jamaica at this point."

Ex. C at 186 (U Visa App Ex. M). Mr. Panton's remorse for a crime committed over 30 years ago strongly weighs in favor of an exercise of discretion.

Second, Mr. Panton has demonstrated transformation and rehabilitation such that he is now an asset to his community. His rehabilitation during prison was recognized and comprehensively documented by Judge Preska of the Southern District of New York, who not only released him from prison, but also released him early from supervised release. Ex. C (U Visa App. Exs. E, F). In numerous letters of support, community leaders, mentees, and family evidence Mr. Panton's passion for youth mentorship in Harlem. *See* Ex. C (U Visa App. Exs M-FF). For example, Bishop Lawrence Edgerton Sr. of Chambers Memorial Baptist Church writes in a letter of support that "[t]he community would suffer if one of their lost sons found his way in prison to be a great leader of the youth, and now he's unavailable to them… Robert is on task right now making me proud". *Id* at 204. One mentee of Mr. Panton's writes in a letter of support that Robert has taught him the "importance of resilience" and "his encouragement motivates me to strive for excellence". Ex. C at 233 (U Visa App. Ex. CC, Letter of Support of Saul Breton. In recognition of his work, Mr. Panton was awarded the Community Warrior Award by Brown Eyez Magazine, African Immigrants Commission of NY & CT and Hollistic Harlem in 2023. Ex. C at 264 (U visa App. Ex. EE, Awards). Ultimately, the waiver designed by Congress for U visa applicants is intended for just such a person as Robert, someone whose cooperation with law enforcement merits waiving past mistakes. He committed a grave error in his youth but has since transformed his life and is driven to make amends in the same place where harm was committed.

Moreover, Respondent asks the Board to consider the immense hardship his deportation would cause to his United States citizen children, sisters, and grandchildren. *See* Ex. C at 216-

228 (U Visa App. Exs. W-AA). His daughter Shamecca writes that "If I knew he was going to be able to stay in the United States I could move to New York and live with him, so that he could spend more time with [my daughter]. It would be so nice to have his help in raising her." Ex. C at 220 (U Visa App Ex. X, Letter of Support Shamecca Panton). Shamecca has struggled in the past with Depression and relies heavily on her father as a single mother. *Id.* Finally, Respondent requests that the Board consider his age and his 5 decades in the United States. Harlem is his home, and he has little to no recollection of Jamaica. Ex. C (U Visa App. Ex. I). At 58 years old, he suffers from physical ailments and struggles with ongoing Post Traumatic Stress Disorder. *Id.* In Harlem, Mr. Panton has an extensive support system and access to medical care. If deported, his sister fears that his "physical and mental health would be in jeopardy". Ex. C at 174 (U visa App. Ex. J). Based on the above, Respondent merits relief in the exercise of discretion.

### c) A Grant of a Waiver of Inadmissibility by the Immigration Judge will Materially Impact the Outcome of Mr. Panton's Proceedings

Mr. Panton currently faces imminent deportation in September 2024 and, absent reopening, is likely to be deported before his application can be adjudicated by USCIS. As of January 31, 2024, USCIS' median processing time for U visa applications is 47.6 months – almost four years. Despite Mr. Panton's pending USCIS application, ICE ERO only granted Mr. Panton deferred action until September 27, 2024. As such, he could be deported this year, without allowing USCIS the opportunity to decide his application. His removal would trigger additional grounds of inadmissibility, namely INA § 212(a)(9)(A) and INA § 212(a)(9)(B)(i)(II), and he would therefore need to seek a waiver for these additional grounds. By contrast, if his case were reopened and a waiver of inadmissibility were granted by the immigration judge, then Mr. Panton could request administrative closure of his proceedings until his U visa application is decided by USCIS. The opportunity to obtain a waiver of inadmissibility from an Immigration

Judge would therefore materially impact Mr. Panton's proceedings and is not duplicative of Mr. Panton's pending application for a waiver with USCIS.

### d) Respondent Has Been Diligent in Seeking Collateral Relief and the Timing of His Motion to Reopen Is Appropriate

As discussed *supra* at Part I.A, Mr. Panton has been diligent in seeking U nonimmigrant status. Prior to removal proceedings, he had no need to apply for U nonimmigrant status and would not have been granted U nonimmigrant status by USCIS because he was a lawful permanent resident. The only delay in the case at hand is the New York Police Department's delay in certifying Mr. Panton during the COVID-19 pandemic. These facts distinguish Mr. Panton's case from *Matter of L-N-Y,* where respondent was the victim of a qualifying crime in 2009 but continued to live in the United States without any legal status for 10 years before applying for relief. 27 I&N Dec. 755 (BIA 2020). Depriving Mr. Panton of the opportunity to seek a waiver from the Immigration Judge because of a police department's delays during a global pandemic would violate principles of fairness and contravene Congress' intent. Similarly, Mr. Panton should not be punished for USCIS' extensive and well-documented backlog.[5] Finally, reopening would be consistent with Congressional intent in creating the U nonimmigrant status. Congress created a generous waiver of inadmissibility for U nonimmigrant applicants under INA § 212(d)(14), and contemplated stays of removal orders pending final adjudication of U nonimmigrant status petitions. INA § 237(d)(1). Therefore, it is consistent with Congress' intent to reopen proceedings to allow a petitioner to seek relief while remaining in the United States and to enable a petitioner to seek a waiver of inadmissibility.

---

[5] *See* Tirzah Christpher, "A visa program created to help law enforcement puts immigrant victims at risk instead", NPR (Aug. 12, 2023), available at: https://www.npr.org/2023/08/12/1193597303/a-visa-program-created-to-help-law-enforcement-solve-crimes-puts-immigrant-victi.

### e)  DHS Position on the Motion

Although DHS has not agreed to join the present motion at this time, ERO has granted Mr. Panton two consecutive stays of removal and a limited grant of deferred action. Ex. D, Ex C (U Visa App Ex. H). These decisions evidence that Mr. Panton is not deemed a priority for removal by DHS.

### f)  Reopening Mr. Panton's Case Is in the Interest of Administrative Efficiency.

Reopening and remanding Mr. Panton's case will not cause an undue burden on the Board and the Immigration Court. If a waiver of inadmissibility is granted, the case may be administratively closed – thereby limiting any burden on the Court. Additionally, reopening would also avoid the need for Mr. Panton to seek reopening in the future once U nonimmigrant status is granted by USCIS. Furthermore, Mr. Panton is not currently detained, and ICE ERO therefore is not spending limited resources on his detention, another factor distinguishing this case from *Matter of L-N-Y*, 27 I&N Dec. 755 (BIA 2020). In fact, reopening would be more administratively efficient for the department because so long as Mr. Panton has a final order, he must repeatedly seek stays of removal to avoid deportation. Finally, even if this court finds that reopening would not be efficient for the Board, Congress evidenced a desire to balance efficiency with fairness for applicants for U nonimmigrant status, including provisions in the legislation to allow for stays of removal. *See supra* at Part III(2)(d).

### B. In the Alternative, Respondent Merits *Sua Sponte* Reopening of His Removal Proceedings

Even if this court finds that Respondent's motion is time-barred, he asks the Board to reopen his proceedings *sua sponte.* The Code of Federal Regulations grants the Board *sua sponte* authority to reopen a case.  8 C.F.R. § 1003.2(a).  Respondent urges that his case is the sort of

exceptional situation that merits *sua sponte* reopening in the exercise of discretion.  *See* 8 C.F.R. § 1003.2(a); *see also Matter of J-J-*, 21 I&N Dec. 976 (BIA 1997).

A significant factor in determining whether to invoke *sua sponte* authority to reopen is whether an applicant can show that he has a likelihood of success on the merits should proceedings be reopened.  *Matter of Beckford*, 22 I&N Dec. 1216, 1220 (BIA 2000) (declining further to invoke *sua sponte* authority where respondent had not persuaded Board that his removal would be "in violation of law or otherwise a gross miscarriage of justice").  As demonstrated above in Section III(2), Respondent is eligible for U nonimmigrant status and merits a waiver of inadmissibility under *L-D-G- v. Holder*, 744 F.3d 1022 (7th Cir. 2014). As such, it is the sort of exceptional case that merits *sua sponte* reopening in the exercise of discretion.  *Matter of J-J-*, 21 I&N Dec. 976 (BIA 1997).

## IV.    CONCLUSION

WHEREFORE, Respondent respectfully requests the Board grant this motion to reopen to permit adjudication of a waiver of inadmissibility by the Immigration Judge. *See L-D-G- v. Holder*, 744 F.3d 1022 (7th Cir. 2014).

Dated: 04/11/2024

Respectfully
submitted,

 /s/ Olivia Abrecht
Olivia Abrecht
Staff Attorney
National Immigrant Justice Center
111 W. Jackson Blvd, Suite 800,
Chicago, Illinois 60604
Tel.: 312.224.1348
Fax: 312.224.1348

*Counsel for Respondent*