# EXHIBIT B

```
                        IMMIGRATION COURT
                     525 W. VAN BUREN, SUITE 500
                         CHICAGO, IL  60607
```

In the Matter of

Case No.: A031-257-320

PANTON, ROBERT SAVIO

Respondent                              IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on **JAN 27, 2021**.
This memorandum is solely for the convenience of the parties. If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[✓] The respondent was ordered removed from the United States to Jamaica
    ~~Mexico~~ or in the alternative to .
[ ] Respondent's application for voluntary departure was denied and
    respondent was ordered removed to ~~Mexico~~ or in the
    alternative to .
[ ] Respondent's application for voluntary departure was granted until
    _____ upon posting a bond in the amount of $ _____
    with an alternate order of removal to ~~Mexico~~.

Respondent's application for:
[✓] Asylum was ( )granted (✓)denied( )withdrawn.
[✓] Withholding of removal was ( )granted (✓)denied ( )withdrawn.
[ ] A Waiver under Section _____ was ( )granted ( )denied ( )withdrawn.
[ ] Cancellation of removal under section 240A(a) was ( )granted ( )denied
    ( )withdrawn.

Respondent's application for:
[ ] Cancellation under section 240A(b)(1) was ( ) granted ( ) denied
    ( ) withdrawn. If granted, it is ordered that the respondent be issued
    all appropriate documents necessary to give effect to this order.
[ ] Cancellation under section 240A(b)(2) was ( )granted ( )denied
    ( )withdrawn. If granted it is ordered that the respondent be issued
    all appropriated documents necessary to give effect to this order.
[ ] Adjustment of Status under Section _____ was ( )granted ( )denied
    ( )withdrawn. If granted it is ordered that the respondent be issued
    all appropriated documents necessary to give effect to this order.
[✓] Respondent's application of (✓) withholding of removal (✓) deferral of
    removal under Article III of the Convention Against Torture was
    ( ) granted (✓) denied ( ) withdrawn.
[ ] Respondent's status was rescinded under section 246.
[ ] Respondent is admitted to the United States as a _____ until _____.
[ ] As a condition of admission, respondent is to post a $ _____ bond.
[ ] Respondent knowingly filed a frivolous asylum application after proper
    notice.
[ ] Respondent was advised of the limitation on discretionary relief for
    failure to appear as ordered in the Immigration Judge's oral decision.
[ ] Proceedings were terminated.
[ ] If you are under a final order of removal, and if you willfully fail
    or refuse to 1) depart when and as required, 2) make timely application
    in good faith for any documents necessary for departure, or 3) present
    yourself for removal at the time and place required, or, if you conspire
    to or take any action designed to prevent or hamper your departure, you
    shall be subject to civil money penalty of up to $813 for each day under

ALIEN NUMBER: 031-257-320        NAME: PANTON, ROBERT SAVIO

such violation. (INA section 274D(a)). If you are removable pursuant to INA 237(a), then you shall further be fined and/or imprisoned for up to 10 years. (INA section 243(a)(1)).

[X] Other: _LPR status terminated_
Date: Jan 27, 2021

SAMUEL B. COLE
Immigration Judge

Appeal: Waived/Reserved    Appeal Due By: 2-26-21

---

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY: MAIL [M]   PERSONAL SERVICE [P]   ELECTRONIC SERVICE [E]
TO: [ ] ALIEN   [ ] ALIEN c/o Custodial Officer   [ ] ALIEN's ATT/REP   [ ] DHS
DATE: _1-27-2021_   BY: COURT STAFF _UC_
Attachments: [ ] EOIR-33   [ ] EOIR-28   [ ] Legal Services List   [ ] Other

Q6

| **Asylum, Withholding of Removal, and CAT Protection** | |
|---|---|
| Credibility and Corroboration | 1 |
| I. Credibility | 1 |
| II. Corroboration | 1 |
| Asylum | 3 |
| I. Bars to Asylum Eligibility | 3 |
| A. Untimeliness Bar | 3 |
| B. Safe Third Country Bar | 4 |
| C. Particularly Serious Crime Bar | 4 |
| D. Serious Nonpolitical Crime Bar | 5 |
| E. Persecutor Bar | 5 |
| F. Terrorism Bar | 6 |
| G. Firm Resettlement Bar | 7 |
| II. Past Persecution | 7 |
| A. Level of Harm | 7 |
| B. Nexus to a Protected Ground | 7 |
| C. Government Action | 8 |
| III. Well-Founded Fear of Future Persecution | 8 |
| A. Rebuttable Presumption of Future Persecution | 8 |
| B. Independent Showing of Future Persecution | 9 |
| C. Reasonable Relocation to Avoid Persecution | 9 |
| D. Nexus to a Protected Ground | 10 |
| E. Government Action | 10 |
| IV. Humanitarian Asylum | 10 |
| V. Discretion | 10 |
| Withholding of Removal Under INA § 241(b)(3) | 12 |
| I. Bars to Withholding of Removal | 12 |
| A. Particularly Serious Crime Bar | 12 |
| B. Serious Nonpolitical Crime Bar | 12 |
| C. Persecutor / Terrorism Bars | 12 |
| II. Past Threat to Life or Freedom | 12 |
| A. Level of Harm | 13 |
| B. Nexus to a Protected Ground | 13 |
| C. Government Action | 13 |
| III. Clear Probability of Future Threat to Life or Freedom | 13 |
| A. Rebuttable Presumption of Future Threat to Life or Freedom | 13 |
| B. Independent Showing of Future Threat to Life or Freedom | 13 |
| C. Reasonable Relocation to Avoid Threat to Life or Freedom | 14 |
| D. Nexus to a Protected Ground | 14 |
| E. Government Action | 14 |
| Protection under the Convention Against Torture | 15 |
| I. Likelihood of Torture | 15 |
| II. Government Acquiescence | 15 |

# Standard Language Addendum

The court incorporates the following statements of law into its oral decision. These statements are not the sole legal basis for the decision and are meant to be read in conjunction with any law cited in the oral decision itself.

# Credibility and Corroboration

An applicant has the burden of establishing eligibility for relief from removal. INA § 240(c)(4)(A); 8 C.F.R. § 1208.13(a).

## I. Credibility

An applicant's testimony alone is sufficient to satisfy her burden of proof if her testimony is credible, persuasive, and refers to specific facts. INA § 240(c)(4)(B). In assessing an applicant's credibility, the court may consider an applicant's demeanor, candor, and responsiveness; inherent plausibility of the claim; the internal consistency of her statements; and any inaccuracy or falsehood, whether or not such inaccuracy or falsehood goes to the heart of an applicant's claim. INA § 240(c)(4)(C). In the absence of documentary proof, the court must use the details of an applicant's testimony to evaluate the truth of her claim. *Mitondo v. Mukasey*, 523 F.3d 784, 789 (7th Cir. 2008).

An adverse credibility finding must be supported by "specific and cogent reasons." *Santashbekov v. Lynch*, 834 F.3d 836, 839 (7th Cir. 2016); *see also Krishnapillai v. Holder*, 563 F.3d 606, 616 (7th Cir. 2009) ("The IJ does remain obliged to distinguish between inconsistencies and the like that are material and those that are not."). When making an adverse credibility finding based on prior inconsistent statements, the court should provide an applicant with an opportunity to explain such inconsistencies. *See Alvarenga-Flores v. Sessions*, 901 F.3d 922, 926–27 (7th Cir. 2018); *But see Sankoh v. Mukasey*, 539 F.3d 456, 468-72 (7th Cir. 2008) (upholding an adverse credibility determination despite the IJ's failure to give the applicant an opportunity to explain the inconsistencies between the application, affidavit, and testimony); *Matter of Y-I-M-*, 27 I&N Dec. 724, 727 (BIA 2019) ("An applicant may be put on notice of inconsistencies in different ways, depending on the circumstances. When an inconsistency is obvious or apparent, it is not necessary to bring it to an applicant's attention."). An applicant must provide "convincing explanation of discrepancies" in order to meet her burden of proof. *Capric v. Ashcroft*, 355 F.3d 1075, 1086 (7th Cir. 2004); *see also Cojocari v. Sessions*, 863 F.3d 616, 620 (7th Cir. 2017) ("We ... have reversed [adverse credibility findings] when the discrepancies were minor, when they concerned irrelevant details in light of the alien's broader claim of persecution, or when the [immigration judge] failed to consider the alien's reasonable explanations offered for a discrepancy. . . .") (alteration in original) (citing *Tarraf v. Gonzales*, 495 F.3d 525, 532 (7th Cir. 2007))).

## II. Corroboration

Testimony that is "credible, but not detailed or persuasive enough without corroboration" will not meet an applicant's burden. *Tao Chen v. Lynch*, 810 F.3d 466, 470–73 (7th Cir. 2016). An applicant whose testimony is not credible must provide "evidence that persuasively corroborates

Last edited: January 2020

the material aspects of his testimony . . . to prevail on his claim." *Arrazabal v. Barr*, 929 F.3d 451, 458 (7th Cir. 2019). In either case, an applicant is on notice to provide reasonably obtainable corroborative evidence without the court's request. *Rapheal v. Mukasey*, 533 F.3d 521, 530 (7th Cir. 2008) ("[W]e add that the REAL ID Act clearly states that corroborative evidence may be required, placing immigrants on notice of the consequences for failing to provide corroborative evidence.").

When the court determines that the applicant should provide corroborative evidence, such evidence must be provided unless the applicant cannot reasonably obtain the evidence. *Sibanda v. Holder*, 778 F.3d 676, 679 (7th Cir. 2015); *cf. Dawoud v. Gonzales*, 424 F.3d 608, 612–13 (7th Cir. 2005) ("We have repeatedly rejected IJs' decisions that a credible asylum applicant's claim can be rejected solely because she did not supply corroborating evidence.") (citing *Balogun v. Ashcroft*, 374 F.3d 492, 502 (7th Cir. 2004)).

The court must consider the corroborative elements of an applicant's evidence and afford them the appropriate weight. *Arrazabal v. Barr*, 929 F.3d 451, 463 (7th Cir. 2019) ("[T]he IJ and the BIA must at a minimum acknowledge the corroboration her statement contains and consider it accordingly."); *Cojocari v. Sessions*, 863 F.3d 616, 628 (7th Cir. 2017) (remanding to an immigration judge for discounting an applicant's "supporting documentation for arbitrary reasons not based on substantial evidence.").

| **Asylum** |
|---|

The court may grant asylum to an applicant who meets the statutory definition of a "refugee." INA § 208(b)(1). A refugee is an individual who is "unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A).

## I. Bars to Asylum Eligibility

### A. Untimeliness Bar

An applicant must prove that she filed an asylum application within one year of the date of her arrival in the United States or that she qualifies for an exception to the one-year deadline. INA §§ 208(a)(2)(B)–(D). The date of arrival is the date of an applicant's most recent arrival. *Matter of F-P-R-*, 24 I&N Dec. 681, 683 (BIA 2008). To qualify for an exception to the deadline, an applicant must show either changed circumstances that materially affect her asylum eligibility or extraordinary circumstances relating to the delay in filing her application. INA §§ 208(a)(2)(B)–(D).

1. Changed Circumstances

Changed circumstances may include, but are not limited to, changes in country conditions in an applicant's home country, changes in applicable United States' law, or an applicant's activities that place her at risk of persecution. 8 C.F.R. § 1208.4(a)(4)(i). The changed circumstances must materially affect an applicant's asylum eligibility. *See Melnik v. Sessions*, 891 F.3d 278, 285 (7th Cir. 2018) (upholding the immigration judge's finding that the applicant's changes were not material to his claim). An applicant must file an asylum application within a reasonable period following those changed circumstances. 8 C.F.R. § 1208.4(a)(4)(ii). Changed circumstances do not justify an automatic exception to the one-year deadline without considering the particular circumstances involved. *Matter of T-M-H- & S-W-C-*, 25 I&N Dec. 193, 193 (BIA 2010).

2. Extraordinary Circumstances

Extraordinary circumstances are events or factors directly related to the failure to meet the one-year deadline, such as an applicant's serious illness, mental, physical, or legal disability, ineffective assistance of counsel, loss of lawful status, or death or serious illness of an applicant's immediate family. 8 C.F.R. § 1208.4(a)(5). An applicant cannot intentionally create these extraordinary circumstances. *Id.* The delay in filing her application must be reasonable under the circumstances. *Id.; Compare Vrljicak v. Holder*, 700 F.3d 1060, 1061–62 (7th Cir. 2012) (no extraordinary circumstances where asylum application was not filed within a "reasonable" time because the petitioner filed it nine months after his visa expired), *with Matter of Y-C-*, 23 I&N Dec. 286, 288 (BIA 2002) (extraordinary circumstances exists where a minor was in INS custody and sought asylum five months after his release).

3. *Mendez Rojas* Class Settlement

An applicant may establish an exception to the timeliness requirement if she is a member of a *Mendez Rojas* certified class. *See Mendez Rojas v. Johnson*, 305 F. Supp. 3d 1176 (W.D. Wash. 2018). A Class-A member is an individual released from DHS custody after she was found to have a credible fear of persecution but did not receive notice from DHS of the one-year deadline to file an asylum application. *Id.* at 1179. A Class-B member is an individual detained upon entry, who expressed a fear of returning to her home country, was issued a Notice to Appear, but was released without a credible fear determination and without notice from DHS of the one-year deadline to file an asylum application. *Id.* If an applicant establishes that she is a class member, her application will be deemed timely. *Id.* at 1188.

### B. Safe Third Country Bar

1. Canadian Land Border

An applicant is ineligible for asylum if, "pursuant to a bilateral or multilateral agreement," she may be removed to another country where she has no fear of persecution. INA § 208(a)(2)(A); 8 C.F.R. § 1208.4(a)(6). The United States and Canada entered into such a bilateral agreement, effective Dec. 29, 2004. *See* 8 C.F.R § 1003.42(h)(2). Subject to exceptions, an applicant arriving in the United States from Canada at a land border port-of-entry shall be returned to Canada to seek protection under Canadian immigration law. 8 C.F.R. § 208.30(e)(6). The court has jurisdiction to determine, in the first instance, that an applicant is barred from asylum pursuant to this bilateral agreement, but the court has no jurisdiction to review a decision by an asylum officer to return an applicant. 8 C.F.R §§ 1003.42(h)(1); 1208.4(a)(6).

2. Southern Land Border

Any applicant who entered or attempted to enter the United States across the southern land border on or after July 16, 2019, after failing to apply for protection from persecution or torture while in a third country, outside an applicant's country of citizenship, nationality, or residence, through which they transited en route to the United States is ineligible for asylum. 8 C.F.R. § 1208.13(c)(4)(i). However, if the applicant did not apply for such protection, she is still eligible for asylum if she can show that she satisfies the definition of "victim of a severe form of trafficking in persons" provided in 8 C.F.R. § 214.11, or if she only traveled through countries that, at the time of transit, were not parties to certain treaties and conventions. 8 C.F.R. §§ 1208.13(c)(4)(ii)–(iii).

### C. Particularly Serious Crime Bar

An applicant is ineligible for asylum if she is convicted by a final judgment of a particularly serious crime. INA § 208(b)(2)(A)(ii); 8 C.F.R. § 1208.13(c)(2)(A). For asylum eligibility, an aggravated felony conviction necessarily constitutes a particularly serious crime. INA § 208(b)(2)(B)(i).

Particularly serious crimes are not limited to aggravated felonies. *Ali v. Achim*, 468 F.3d 462, 469 (7th Cir. 2006). Where an applicant's conviction does not constitute aggravated felonies, the court should examine "the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction" to determine if the conviction is particularly serious. *Matter of N-A-M-*, 24 I&N Dec. 336, 342 (BIA 2007). In some instances, the elements of

the offense may be dispositive in the court's determination. *Id.* If not, "consideration of the individual facts and circumstances is appropriate." *Id.* (quoting *Matter of L-S-*, 22 I&N Dec. 645, 651 (BIA 1999)). The court should consider "all reliable information" including conviction records, sentencing information, and any other relevant information "outside the confines of a record of conviction." *Id.* Relevant factors include the length of any sentence imposed and whether the crime was one against the person or property. *Id.* at 343; *Matter of S-V-*, 22 I&N Dec. 1306, 1308 (BIA 2000). The sentence imposed, however, is not the predominant factor in the analysis. *Id.* Crimes against the person are generally more serious than crimes against property. *See Matter of S-V-*, 22 I&N Dec. 1306, 1308 (BIA 2000); *Matter of L-S-*, 22 I&N Dec. 645, 649–50 (BIA 1999). Although the court may consider the underlying facts of the conviction, it may not re-determine the applicant's guilt or innocence. *Matter of L-S-*, 22 I&N Dec. 645, 651 (BIA 1999).

### D. Serious Nonpolitical Crime Bar

An applicant cannot qualify for asylum when there are serious reasons to believe that she has committed a serious nonpolitical crime outside the United States prior to her arrival in the United States. INA § 208(b)(2)(A)(iii); 8 C.F.R. § 1208.13(c)(1). "Serious reasons" has been equated to "probable cause." *Matter of E-A-*, 26 I&N Dec. 1, 3 (BIA 2012). An applicant's testimony is sufficient to establish probable cause to believe that she was involved in the criminal conduct. *Id.* at 3-4.

A crime is considered a serious nonpolitical crime if the "crime is grossly out of proportion to the political objective or if it involves acts of an atrocious nature." *Matter of E-A-*, 26 I&N Dec. 1, 3 (BIA 2012) (quoting *Matter of McMullen*, 19 I&N Dec. 90, 97-98 (BIA 1984)). To assess the political nature of a crime, the court must consider whether the acts were directed at a governmental entity, political organization, or modification of the political organization and if there is a close and direct causal link between the crime and the political purpose. *Id.* Once the crime is determined to be political, if the criminal activity is not "atrocious in nature," the court must, on a case-by-case basis, "balance the seriousness of the criminal acts against the political aspect of the conduct to determine whether the criminal nature of the applicant's acts outweighs their political character." *Id.*

### E. Persecutor Bar

An applicant who "ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion" is barred from asylum. INA §§ 101(a)(42), 208(b)(2)(A)(i); 8 C.F.R. § 1208.13(c)(2)(E). The court must evaluate the totality of circumstances when determining whether the persecutor bar applies. *Matter of A-H-*, 23 I&N Dec. 774, 785 (AG 2005). Relevant factors include (1) the nexus between an applicant's role, acts, or inaction, and the acts of persecution; and (2) her scienter or knowledge of the persecution; however, "[m]ere acquiescence or membership in an organization[] is insufficient to establish culpability." *Matter of D-R-*, 27 I&N Dec. 105, 118-19 (BIA 2017) (internal citation omitted).

An applicant may raise a limited duress defense to the persecutor bar. *See Matter of Negusie*, 27 I&N Dec. 347, 351–52; 362–65 (BIA 2018), *certifying questions to* 27 I&N Dec. 481 (AG 2018); *see also Matter of E-L-H-*, 23 I&N Dec. 814, 828 (BIA 2005) ("We therefore find that a Board precedent decision referred to the Attorney General . . . remains applicable to other cases

involving the same issue or issues unless and until vacated, modified, or overruled."). To meet the minimum threshold requirements for the duress exception, an applicant must establish by a preponderance of the evidence that: (1) she acted under an imminent threat of death or serious bodily injury to herself or others; (2) she reasonably believed that the threatened harm would be carried out unless she acted or refrained from acting; (3) she had no reasonable opportunity to escape or otherwise frustrate the threat; (4) she did not place herself in a situation in which she knew or reasonably should have known that she would likely be forced to act or refrain from acting; and (5) she knew or reasonably should have known that the harm she inflicted was not greater than the threatened harm to herself or others. *Matter of Negusie*, 27 I&N Dec. 347, 363 (BIA 2018).

### F. Terrorism Bar

An applicant is ineligible for asylum if she is a member of a "terrorist organization" or has "engaged in a terrorist activity." *See* INA §§ 208(b)(2)(A)(v); 212(a)(3)(B)(i); 237(a)(4)(B). Terrorist activity includes any activity that is unlawful under the laws of the place where it is committed and involves, among other acts, seizing, detaining, or threatening to kill or injure another individual in order to compel a third person to do something; the use of any explosive, firearm, or other weapon with intent to endanger the safety of one or more individuals; or a threat, attempt, or conspiracy to do any of the above. INA § 212(a)(3)(B)(iii).

To "engage in terrorist activity" includes, among others: committing or inciting to commit, under circumstances indicating an intention to cause death or serious bodily injury, a terrorist activity; gathering information on potential targets; preparing or planning a terrorist activity; soliciting funds for a terrorist organization or activity; or committing an act which an applicant knows, or reasonably should know, affords material support for the commission of a terrorist activity or to any individual who an applicant knows, or reasonably should know, plans to commit a terrorist activity. INA § 212(a)(3)(B)(iv). Material support for the commission of a terrorist activity may include peaceful activities when such support is for a terrorist organization. *Khan v. Holder*, 766 F.3d 689, 698 (7th Cir. 2014); *Hussain v. Mukasey*, 518 F.3d 534, 538 (7th Cir. 2008); *see also Jabateh v. Lynch*, 845 F.3d 332, 340–41 (7th Cir. 2017) (noting the fact that petitioner offered support to a member of a terrorist organization rather than the organization itself is immaterial).

A "terrorist organization" has three statutory meanings. INA §§ 212(a)(3)(B)(vi)(I)-(III). First, it may refer to an organization designated as a Foreign Terrorist Organization by the Secretary of State pursuant to INA § 219 ("Tier I"). INA § 212(a)(3)(B)(vi)(I). Second, it may refer to an organization otherwise designated, upon publication in the Federal Register, as a terrorist organization ("Tier II"). INA § 212(a)(3)(B)(vi)(II). Third, it may refer to an "undesignated" terrorist organization, which is defined as "a group of two or more individuals, whether organized or not, which engaged in, or has a subgroup which engages in," terrorist activity, as previously defined ("Tier III"). INA § 212(a)(3)(B)(vi)(III).

An exception to the terrorism bar exists when an applicant has engaged in terrorist activity with a Tier III organization if she can demonstrate by clear and convincing evidence that she did not know, and should not have reasonably known, that the organization was a terrorist organization. INA § 212(a)(3)(B)(i)(IV). Consequently, "if an organization does not become a terrorist organization until it authorizes terrorist acts, then a person may not know whether he is

Page 6 of 15

Last edited: January 2020

supporting a terrorist organization until he knows which acts are authorized." *Khan v. Holder*, 766 F.3d 689, 699 (7th Cir. 2014). Even when an applicant demonstrates that the exception applies, asylum may be discretionarily denied if there are reasonable grounds for regarding the applicant as a danger to the security of the United States. INA § 208(b)(2)(A)(v).

### G. Firm Resettlement Bar

An applicant who firmly resettles in a third country prior to arrival in the United States is ineligible for asylum. INA § 208(b)(2)(A)(vi). Firm resettlement happens when a third country extends "an offer of permanent resident status, citizenship, or some other type of permanent resettlement" to an applicant. 8 C.F.R. § 1208.15.

The court must employ a four-step framework for analyzing firm resettlement claims. *Matter of A-G-G-*, 25 I&N Dec. 486, 501–503 (BIA 2011). First, DHS bears the initial burden to present prima facie evidence of an offer of firm resettlement; second, an applicant may rebut the evidence of a firm resettlement offer by showing, by a preponderance of the evidence, that such an offer has not been made or that she is ineligible for such an offer; third, the court should consider the totality of the evidence presented by the parties to determine whether an applicant rebutted DHS's evidence of an offer of firm resettlement; and finally, if an applicant fails to rebut the presumption of firm resettlement, an applicant bears the burden of demonstrating by a preponderance of the evidence that she qualifies for one of two exceptions. *Id.*

To qualify for the first exception, an applicant must demonstrate that her "entry into that country was a necessary consequence" of her flight from persecution, that she remained in that country only as long as was necessary to arrange onward travel, and that she did not establish significant ties in that country. 8 C.F.R. § 1208.15(a). To qualify for the second exception, an applicant must demonstrate that the conditions of her residence in the third country "were so substantially and consciously restricted by the authority" of the country that she was not resettled. 8 C.F.R. § 1208.15(b).

## II. Past Persecution

### A. Level of Harm

To show past persecution, the harm an applicant suffered must rise above mere harassment. *Stanojkova v. Holder*, 645 F.3d 943, 947–49 (7th Cir. 2011). Persecution "involves the use of *significant* physical force against a person's body, or the infliction of comparable physical harm without direct application of force . . . or nonphysical harm of equal gravity." *Stanojkova v. Holder*, 645 F.3d 943, 948 (7th Cir. 2011) (emphasis in original). To determine whether the applicant has suffered past persecution, the court must assess past experiences cumulatively. *Kholyavskiy v. Mukasey*, 540 F.3d 555, 570–71 (7th Cir. 2008). The court must conduct this assessment independently. *See Plaza-Ramirez v. Sessions*, 908 F.3d 282, 285 n.1 (7th Cir. 2018) ("when deciding *in the first instance* whether persecution has occurred, the Board must exercise its own independent judgement").

### B. Nexus to a Protected Ground

An applicant's race, religion, nationality, membership in a particular social group, or political opinion must be "at least one central reason" for her persecution. INA § 208(b)(1)(B)(i);

Page 7 of 15

Last edited: January 2020

*see also Gjerazi v. Gonzales*, 435 F.3d 800, 812 (7th Cir. 2006) (describing the "mixed motives doctrine" to explain that a persecutor may have multiple motives for persecuting the applicant). An applicant may show a persecutor's motives through direct or circumstantial evidence. *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992); *see also Martinez-Buendia v. Holder*, 616 F.3d 711, 715 (7th Cir. 2010) (citation omitted) ("[I]n certain cases, the factual circumstances alone may constitute sufficient circumstantial evidence of a persecutor's motives."). Such evidence may include statements by the persecutors or treatment of others in the population who are in a similar situation. *See WGA v. Sessions*, 900 F.3d 957, 966 (7th Cir. 2018).

To qualify for asylum based on group membership, an applicant must: (1) identify a cognizable particular social group, (2) establish that she is a member of that group, and (3) establish that the persecution was on account of her membership in that group. *Escobar v. Holder*, 657 F.3d 537, 545 (7th Cir. 2011). To be cognizable, a group must be defined by an immutable characteristic. *Cece v. Holder*, 733 F.3d 662, 669 (7th Cir. 2013) (en banc) ("[T]his Circuit has deferred to the Board's *Acosta* formulation of social group.") (citing *Matter of Acosta*, 27 I&N Dec. 211, 233 (BIA 1985)). Additionally, the protected characteristic must exist independently from the underlying harm. *See Matter of A-B-*, 27 I&N Dec. 316, 334 (AG 2018); *see also Melnik v. Sessions*, 891 F.3d 278, 286 (7th Cir. 2018) ("We, like the Board, have held consistently that where a group shares no common characteristic other than the fact that its members have been persecuted, it does not qualify as a social group.").

## C. Government Action

To establish eligibility for asylum, an applicant must show that she is unable or unwilling to avail herself of the protection of the country of removal because of persecution. *See* INA § 101(a)(42). The government must have inflicted the persecution or the government must have been unable or unwilling to protect an applicant from private attackers. *See NLA v. Holder*, 744 F.3d 425, 440–42 (7th Cir. 2014); *Hor v. Gonzales*, 400 F.3d 482, 485 (7th Cir. 2005) ("Persecution is something a *government* does, either directly or by abetting (and thus becoming responsible for) private [misconduct] by throwing in its lot with the deeds or by providing protection so ineffectual that it becomes a sensible inference that the government sponsors the misconduct.") (emphasis in original). Thus, persecution "does not encompass purely private actions." *Vahora v. Holder*, 707 F.3d 904, 908 (7th Cir. 2013).

When the persecutor was a private actor, an applicant need not report the persecution to establish that the government was unwilling or unable to protect her if doing so would have been futile or have subjected her to further abuse. *See Vahora v. Holder*, 707 F.3d 904, 909 (7th Cir. 2013) (citing *Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1058 (9th Cir. 2006)). A government need not have provided "perfect law enforcement" in order to protect its citizens. *Urbina-Dore v. Holder*, 735 F.3d 952, 954 (7th Cir. 2013). However, "[t]he mere fact that a country may have problems effectively policing certain crimes—such as domestic violence or gang violence—or that certain populations are more likely to be victims of crime, cannot itself establish an asylum claim." *Matter of A-B-*, 27 I&N Dec. 316, 320 (AG 2018).

## III.    Well-Founded Fear of Future Persecution

### A. Rebuttable Presumption of Future Persecution

An applicant who establishes past persecution is entitled to a presumption that she has a well-founded fear of future persecution on the basis of her original claim. 8 C.F.R. § 1208.13(b)(1). DHS can rebut this presumption if it establishes by a preponderance of the evidence that either: (1) there has been a fundamental change in circumstances in the country of removal, such that an applicant no longer has a well-founded fear of persecution on account of a protected ground; or (2) an applicant could avoid future persecution by relocating to another part of the country and under the circumstances, it would be reasonable to expect her to do so. 8 C.F.R. § 1208.13(b)(1)(i).

### B. Independent Showing of Future Persecution

When an applicant has not suffered past persecution, she bears the burden of demonstrating she has a well-founded fear of future persecution on account of a protected ground. 8 C.F.R. § 1208.13(b)(2). An applicant may establish a well-founded fear of persecution by demonstrating her "fear is subjectively genuine and objectively reasonable in light of credible evidence." *Capric v. Ashcroft*, 355 F.3d 1075, 1085 (7th Cir. 2004). The subjective component is satisfied as long as an applicant's testimony is credible. *See Bolante v. Mukasey*, 539 F.3d 790, 794 (7th Cir. 2008). The objective component requires an applicant to prove either that there is a reasonable possibility that she will be singled out individually for persecution or that there is a pattern or practice of persecution of an identifiable group, to which she belongs. 8 C.F.R. § 1208.13(b)(2); *see also Ayele v. Holder*, 564 F.3d 862, 868 (7th Cir. 2009). To show she will be singled out, an applicant needs to demonstrate that there is a "reasonable possibility" of her persecution. *Ayele v. Holder*, 564 F.3d 862, 868 (7th Cir. 2009). To show a pattern or practice of persecution, "[t]here must be a systematic, pervasive, or organized effort to kill, imprison, or severely injure members of the protected group, and this effort must be perpetrated or tolerated by state actors." *Krishnapillai v. Holder*, 563 F.3d 606, 620 (7th Cir. 2009) (citation omitted).

### C. Reasonable Relocation to Avoid Persecution

To establish well-founded fear of future persecution, an applicant also bears the burden to establish that she could not reasonably relocate to avoid future harm. 8 C.F.R. § 1208.13(b)(3). Where the persecutor is the government or a government-sponsored actor, internal relocation is presumably unreasonable unless DHS establishes otherwise by a preponderance of the evidence. 8 C.F.R. § 1208.13(b)(3)(ii).

In assessing the reasonableness of such relocation, the court should consider, "whether an applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitation; and social and culture constraints, such as age, gender, health, and social and familial ties." 8 C.F.R. § 1208.13(b)(3). An applicant's skills and experience can also be considered when determining whether relocation is reasonable. *See NYCC v. Barr*, 930 F.3d 884, 890 (7th Cir. 2019) (concluding that the applicant could reasonably relocate to Mexico because she was fluent in Spanish, spent nearly all her life in Mexico, and had successfully worked there).

Living in hiding or hiding personal characteristics is not safe relocation. *See Agbor v. Gonzales*, 487 F.3d 499, 505 (7th Cir. 2007); *see also Velasquez-Banegas v. Lynch*, 846 F.3d 258, 262 (7th Cir. 2017) (explaining that the "law does not require people to hide characteristics like religion or sexual orientation, and medical conditions, such as being HIV positive"); *NLA v. Holder*, 744 F.3d 425, 442 (7th Cir. 2014) (reasoning that "one need not be secreted in an attic

behind a hidden bookcase to be living in hiding" and that "moving frequently, changing phone numbers and living under an assumed identity is a horrible way to live and certainly constitutes living in hiding").

### D. Nexus to a Protected Ground

To demonstrate well-founded fear of future persecution, an applicant must show her fear has a nexus to a protected ground. 8 C.F.R. § 1208.13(b)(1)(i)(A). *See supra* Asylum. Section II. Past Persecution. B. Nexus to a Protected Ground for additional analysis.

### E. Government Action

To demonstrate well-founded fear of future persecution, an applicant must show that she is unable or unwilling to return to, or avail herself of the protection of, that country because of her fear. 8 C.F.R. § 1208.13(b)(1)(i)(C). *See supra* Asylum. Section II. Past Persecution. II. Past Persecution. C. Government Action for additional analysis.

## IV. Humanitarian Asylum

An applicant who establishes past persecution may still be eligible for asylum in the absence of a well-founded fear of persecution. The court may grant humanitarian asylum where an applicant has demonstrated "compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution" or "a reasonable possibility that . . . she may suffer other serious harm upon removal to that country." 8 C.F.R. § 1208.13(b)(1)(iii). Only "rare cases" meet this standard. *Toptchev v. INS*, 295 F.3d 714, 721 (7th Cir. 2002) (citations omitted).

Humanitarian asylum based on the severity of past persecution is reserved for "atrocious" persecution that are "so severe that repatriation would be inhumane." *Asani v. INS*, 154 F.3d 719, 724 (7th Cir. 1998); *see also Matter of Chen*, 20 I&N Dec. 16, 19 (BIA 1989). In evaluating the severity of the past persecution, the court must consider the severity of harm and its long-lasting effects. *See Matter of N-M-A-*, 22 I&N Dec. 312, 326 (BIA 1998). The court must also grant relief as a matter of discretion, considering an applicant's "age, health, or family ties." *Id.* at 325 n. 7.

Alternatively, an applicant can show that there is a reasonable possibility of "other serious harm" in her country of removal. 8 C.F.R. § 1208.13(b)(1)(iii)(B). The "other serious harm" may be unrelated to an applicant's past harm and need not be on account of a protected ground. *Matter of L-S-*, 25 I&N Dec. 705, 714 (BIA 2012). However, such harm must rise to the level of persecution. *Id.* In determining whether an applicant has a reasonable probability of suffering "other serious harm," the court can consider the following factors: current conditions, civil strife, extreme economic deprivation, and other physical or psychological harm the applicant may face. *Id.*

## V. Discretion

An applicant must merit a favorable exercise of discretion for a grant of asylum. INA § 208(b)(1) ("The Secretary of Homeland Security or the Attorney General *may* grant asylum to an alien") (emphasis added); *see Matter of Pula*, 19 I&N Dec. 467, 474 (BIA 1987); *see also Alsagladi v. Gonzales*, 450 F.3d 700, 701 (7th Cir. 2006) ("Status as a victim of persecution makes

an alien *eligible* for asylum but does not compel an exercise of discretion in his favor."). The court must balance the applicant's negative and positive equities to determine whether to exercise discretion favorably. *See Matter of Marin*, 16 I&N Dec. 581, 584 (BIA 1978) (outlining factors to consider when exercising discretion).

## Withholding of Removal Under INA § 241(b)(3)

Withholding of removal is mandatory, rather than discretionary. INA § 241(b)(3)(A); 8 C.F.R. § 1208.16(b).

### I. Bars to Withholding of Removal

#### A. Particularly Serious Crime Bar

An applicant is ineligible for withholding of removal if she is convicted by a final judgment of a particularly serious crime. INA § 241(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2). For withholding of removal, an aggravated felony conviction with a term of imprisonment of at least five years is *per se* a particularly serious crime. *Id.*

However, a sentence less than five years does not preclude the court from determining that an applicant has been convicted of a particularly serious crime. INA § 241(b)(3)(B); *see also Estrada-Martinez v. Lynch*, 809 F.3d 886, 890, 893–94 (7th Cir. 2015) (finding no legal error in the Board of Immigration Appeals' determination that an applicant's conviction that did not result imprisonment was still a particularly serious crime); *Ali v. Achim*, 468 F.3d 462, 467–71 (7th Cir. 2006). In such cases, the court should examine "the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction" to determine if the conviction is particularly serious. *Matter of N-A-M-*, 24 I&N Dec. 336, 342 (BIA 2007) (citations omitted).

For additional analysis on the definition of "particularly serious crime," *see supra* Asylum. Section I. Bars to Asylum Eligibility. C. Particularly Serious Crime Bar.

#### B. Serious Nonpolitical Crime Bar

An applicant is barred from withholding of removal when there are serious reasons to believe that she has committed a serious nonpolitical crime outside the United States prior to her arrival in the United States. INA § 241(b)(3)(B)(iii); 8 C.F.R. § 1208.16(d)(2).

For additional analysis on the definition of "serious nonpolitical crime," *see supra* Asylum. Section I. Bars to Asylum Eligibility. D. Serious Nonpolitical Crime Bar.

#### C. Persecutor / Terrorism Bars

An applicant's withholding of removal application shall be denied if the evidence "indicates the applicability" of the persecutor or terrorism bars. INA § 241(b)(3)(B); 8 C.F.R. § 1208.16(d)(2); *see also SAB v. Boente*, 847 F.3d 542, 546 (7th Cir. 2017) (explaining that knowing support of a terrorism organization is a bar to withholding of removal); *Issaq v. Holder*, 617 F.3d 962, 969 (7th Cir. 2010) (noting the persecutor bar applies to those seeking withholding of removal).

For additional analysis on the persecutor bar and the terrorism bar, *see supra* Asylum. Sections I. Bars to Asylum Eligibility. E. Persecutor Bar & F. Terrorism Bar.

### II. Past Threat to Life or Freedom

### A. Level of Harm

To qualify for withholding of removal based on past harm, an applicant must demonstrate that her life or freedom was threatened in the proposed country of removal. 8 C.F.R. § 1208.16(b); *see also WGA v. Sessions*, 900 F.3d 957, 965 (7th Cir. 2018) (stating that withholding of removal carries a higher burden on the severity of the harm the applicant faces than asylum, requiring a threat to life or freedom). For additional analysis on the severity of an applicant's past harm, *see supra* Asylum. Section II. Past Persecution. A. Level of Harm.

### B. Nexus to a Protected Ground

The nexus requirement is the same for both asylum and withholding of removal. 8 C.F.R. § 1208.16(b); *see also WGA v. Sessions*, 900 F.3d 957, 965 (7th Cir. 2018).

For additional analysis on an applicant's past harm and its nexus to a protected ground, *see supra* Asylum. Section II. Past Persecution. B. Nexus to a Protected Ground.

### C. Government Action

To qualify for withholding of removal, an applicant's threat to life or freedom "must be attributable to the government or to a nongovernmental entity that the government is unable or unwilling to control." *Cruz-Martinez v. Sessions*, 885 F.3d 460, 463 (7th Cir. 2018) (citation omitted).

For additional analysis on government action, *see supra* Asylum. Section II. Past Persecution. C. Government Action.

## III. Clear Probability of Future Threat to Life or Freedom

### A. Rebuttable Presumption of Future Threat to Life or Freedom

An applicant can satisfy her burden of demonstrating a "clear probability" that her life or freedom would be threatened on account of a protected trait if she establishes that she suffered "past persecution" in the country of removal. 8 C.F.R. § 1208.16(b)(2). An applicant who establishes past threat to life or freedom is entitled to a presumption that her life or freedom would be threatened in the future on the basis of her original claim. 8 C.F.R. § 1208.16(b)(1).

DHS can rebut this presumption if it establishes, by a preponderance of the evidence, that either: (1) there has been a fundamental change in circumstances in the country of removal, such that an applicant's life or freedom would no longer be threatened on account of a protected ground; or (2) an applicant could avoid future harm by relocating to another part of the country and, under the circumstances, it would be reasonable to expect her to do so. 8 C.F.R. §§ 1208.16(b)(1)(i)–(ii).

### B. Independent Showing of Future Threat to Life or Freedom

If an applicant has not suffered sufficient past threat to life or freedom, she bears the burden of demonstrating that her life or freedom would be threatened in the future. 8 C.F.R. § 1208.16(b)(2); *see W.G.A. v. Sessions*, 900 F.3d 957, 965 (7th Cir. 2018) (stating that withholding of removal carries a higher burden on the likelihood that an applicant faces harm,

requiring clear probability). An applicant may meet her burden by demonstrating that she would be singled out individually for such harm, or by establishing "a pattern or practice of persecution of a group of persons similarly situated" to an applicant "such that it is more likely than not that his or her life or freedom would be threatened upon return to that country." 8 C.F.R. § 1208.16(b)(2).

For additional analysis on the likelihood of an applicant's future threat, *see supra* Asylum. Section III. Well-Founded Fear of Future Persecution. B. Independent Showing of Future Persecution.

### C. Reasonable Relocation to Avoid Threat to Life or Freedom

If an applicant did not demonstrate that she experienced a past threat to life or freedom, she also bears the burden to establish that she could not reasonably relocate to avoid future harm. 8 C.F.R. § 1208.16(b)(3)(i). Where the persecutor is a government or government-sponsored, it is presumed that internal relocation would not be reasonable, unless DHS establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for an applicant to relocate. 8 C.F.R. § 1208.16(b)(3)(ii). In assessing the reasonableness of such relocation, the court should consider, "whether an applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitation; and social and culture constraints, such as age, gender, health, and social and familial ties." 8 C.F.R. § 1208.16(b)(3).

*See also supra* Asylum Section III. Well-Founded Fear of Future Persecution. C. Reasonable Relocation to Avoid Persecution (discussing Seventh Circuit precedent, considering that the regulations regarding reasonable relocation for asylum and withholding of removal mirror each other).

### D. Nexus to a Protected Ground

To independently show a clear probability of future threat to life or freedom, an applicant must demonstrate a nexus to a protected ground. 8 C.F.R. § 1208.16(b)(2). The analysis is the same as the nexus requirement for past threat to life or freedom. *See also supra* Withholding. Section II. Past Threat to Life or Freedom. B. Nexus to a Protected Ground.

### E. Government Action

To independently show a clear probability of future threat to life or freedom, an applicant's threat "must be attributable to the government or to a nongovernmental entity that the government is unable or unwilling to control." *Cruz-Martinez v. Sessions*, 885 F.3d 460, 463 (7th Cir. 2018) (citation omitted). The analysis is the same as the analysis for past threat to life or freedom. *See supra* Withholding. Section II. Past Threat to Life or Freedom. C. Government Action.

## Protection under the Convention Against Torture

No person may be removed to a country where it is "more likely than not" that such person will be subject to torture. 8 C.F.R. §§ 1208.16–18; *see Khan v. Filip*, 554 F.3d 681, 690 (7th Cir. 2009). This standard requires "substantial grounds for believing that" if removed, an applicant "would be *in danger* of being tortured." *Rodriguez-Molinero v. Lynch*, 808 F.3d 1134, 1136 (7th Cir. 2015) (emphasis in original) (citation omitted).

### I. Likelihood of Torture

An applicant must establish a "substantial risk" of torture to qualify for protection under the Convention Against Torture. *Perez-Montes v. Sessions*, 880 F.3d 849, 850 (7th Cir. 2018) (noting that the "substantial risk" and the "more likely than not" standards are both non-quantitative restatements of the same standard). An applicant must demonstrate that each step in the claimed hypothetical chain of events is more likely than not to occur. *Matter of J-F-F-*, 23 I&N Dec. 912, 917–18 (AG 2006).

To determine whether torture is more likely than not to occur, the court should consider evidence of past torture inflicted upon an applicant; evidence that an applicant could relocate to a part of the country of removal where she is not likely to be tortured; evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and other relevant information regarding conditions in the country of removal. *See* 8 C.F.R. § 1208.16(c)(3). While considering evidence of torture of similarly situated individuals, the court must focus on whether the evidence establishes that an applicant will personally suffer the same torture. *See, e.g., Herrera-Garcia v. Barr*, 918 F.3d 558, 562 (7th Cir. 2019); *Barry v. Barr*, 916 F.3d 666, 670–71 (7th Cir. 2019); *Molina-Avila v. Sessions*, 907 F.3d 977, 982 (7th Cir. 2018) ("We do not suggest that evidence of torture of similarly situated individuals is irrelevant to a CAT petition for deferral. But the ultimate question is whether the evidence relied upon establishes that the petitioner will more likely than not be tortured if removed.").

### II. Government Acquiescence

Government acquiescence "requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7); *see Orellana-Arias v. Sessions*, 865 F.3d 476, 489 n.3 (7th Cir. 2017) (noting that the Seventh Circuit has not adopted the "willful blindness" standard in analyzing government acquiescence). For "extreme cases, government indifference to widespread misconduct can constitute acquiescence." *Molina-Avila v. Sessions*, 907 F.3d 977, 984 (7th Cir. 2018); *Contra Lozano-Zuniga v. Lynch*, 832 F.3d 822, 831 (7th Cir. 2016) (reasoning that evidence regarding "gang problems" and "government official corruption" did not compel a finding that the government acquiesced to the applicant's torture).