# EXHIBIT C



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*



| | |
|---|---|
| FERNANDEZ, LHESLY M.<br>NATIONAL IMMIGRANT JUSTICE CE<br>224 S MICHIGAN AVE. SUITE 600<br>CHICAGO  IL  60604 | DHS/ICE OFFICE OF CHIEF COUNSEL - CHI<br>525 WEST VAN BUREN STREET<br>CHICAGO IL 60607 |

Name: PANTON, ROBERT SAVIO          A 031-257-320

Date of this Notice:   6/23/2021

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Malphrus, Garry D.

Userteam: Docket





U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

5107 Leesburg Pike, Suite 2000
Falls Church, Virginia 22041

**PANTON, ROBERT SAVIO**
**A 031257320**

DHS/ICE OFFICE OF CHIEF COUNSEL - CHI
525 WEST VAN BUREN STREET
CHICAGO IL 60607

Name: PANTON, ROBERT SAVIO                A 031-257-320

Date of this Notice:   6/23/2021

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Malphrus, Garry D.

Userteam: Docket

**U.S. Department of Justice**  
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File: A031-257-320 – Chicago, IL        Date:

JUN 2 3 2021

In re: Robert Savio PANTON

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Lhesly M. Fernandez, Esquire

APPLICATION: Convention Against Torture

    The respondent, a native and citizen of Jamaica, appeals from the January 27, 2021, decision of the Immigration Judge denying his application for protection under the regulations implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994) (CAT). 8 C.F.R. §§ 1208.16(c), 1208.17-18. The appeal will be dismissed.

    We review findings of fact determined by an Immigration Judge, including credibility findings, under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review questions of law, discretion, and judgment, and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

    The Immigration Judge denied the respondent's application for protection under the CAT based on his determination that the respondent did not meet his burden to show that it is more likely than not that he would be tortured at the instigation, or with the consent or acquiescence, of a public official in Jamaica. See 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). For the reasons stated by the Immigration Judge, we affirm the denial of the respondent's application for CAT protection.

    On appeal, the respondent first argues that the Immigration Judge applied the wrong legal standard in assessing the likelihood that the respondent would be harmed in Jamaica (Respondent's Br. at 10-11). We disagree. Our review of the Immigration Judge's decision shows that he applied the proper legal standard requiring the respondent to show that it is more likely than not that he would be tortured if returned to Jamaica (IJ at 4). See 8 C.F.R. § 1208.16(c)(2).

    Next, the respondent argues that the Immigration Judge erred by not considering all of the record evidence cumulatively in assessing the respondent's claim for protection (Respondent's Br. at 11-17). Again, we disagree. The Immigration Judge considered all relevant facts in the record, including the respondent's presence in the United States since he was 4 years old; his past involvement with drug traffickers; the fact that he was shot in 1991 in New York by someone who accused him of being a government informant; his 1991 conviction for conspiracy to possess with intent to distribute heroin; the more than 30 years he served in prison as a result of this conviction; his belief that he would be targeted by criminal organizations in Jamaica that he asserts believe he cooperated with the government in the drug case; the fact that he did not cooperate with the government in the drug case; the fact that one of his codefendants did cooperate with the

A031-257-320

government and was sentenced to a much shorter prison term; the fact that the individual who cooperated with the government was murdered 8 years prior to the final removal hearing; his connection with his cousin who was affiliated with the Spangler criminal organizations; the fact that the respondent was once threatened in prison 20 years prior to the final removal hearing and that the issue was resolved when the respondent was able to establish that he did not cooperate with the government; the respondent's compassionate early release from prison; the fact that the respondent provided information to the government involving the rape of a child that was unrelated his own criminal case and that this was noted in the order granting him compassionate early release; and the fact that violent crime and criminal organizations are serious problems in Jamaica (IJ at 2-5; Tr. at 62-65, 67-69, 71-80; Exhs. 1-2, 4).

The Immigration Judge properly considered the entirety of the record evidence cumulatively and determined that the respondent did not meet his burden to show that it is more likely than not that anyone in Jamaica would specifically target him for harm (IJ at 4-5). *See Bernard v. Sessions*, 881 F.3d 1042, 1047 (7th Cir. 2018) (explaining that a claim for CAT protection must establish "that there is a substantial risk that that the [respondent] will be targeted specifically); *Matter of J-R-G-P-*, 27 I&N Dec. 482, 484 (BIA 2018) (explaining that a claim for CAT protection "must be considered in terms of the aggregate risk of torture from all sources, and not as separate, divisible . . . claims") (citation omitted). The Immigration Judge's determination is supported by the lack of non-speculative evidence showing that anyone blames the respondent for the murder of his former codefendant, believes he cooperated with the government in his criminal case, or associates him with a rival criminal group based on his cousin's affiliations. Given the record before us, we conclude that the Immigration Judge's factual finding regarding the likelihood of future harm is not clearly erroneous. *See Matter of Z-Z-O-*, 26 I&N Dec. 586, 590 (BIA 2015) ("[A]n Immigration Judge's predictive findings of what may or may not occur in the future are findings of fact, which are subject to a clearly erroneous standard of review."); *see also Cooper v. Harris*, 137 S. Ct. 1455, 1465 (2017) (holding that on clear error review, "[a] finding that is 'plausible' in light of the full record—even if another is equally or more so—must govern.").

As the record does not establish that it is more likely than not that anyone in Jamaica would specifically target the respondent for torture, we affirm the Immigration Judge's determination that the respondent is ineligible for protection under the CAT. Given our disposition of this matter, it is unnecessary for us to address the respondent's appellate arguments regarding government acquiescence (Respondent's Br. at 14-16). *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

Accordingly, the following order will be entered.

ORDER: The appeal is dismissed.

*[signature]*
_____
FOR THE BOARD

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
CHICAGO, ILLINOIS

File: A031-257-320                                          January 27, 2021

In the Matter of

ROBERT SAVIO PANTON            )        IN REMOVAL PROCEEDINGS
                               )
    RESPONDENT                 )

CHARGES:    INA Section 237(a)(2)(A)(iii) - convicted of an aggravated felony under Section 101(a)(43)(U) relating to an attempt or conspiracy to commit an offense described in Section 101(a)(43) of the Act.

APPLICATION:    Deferral of removal under the Convention aAgainst Torture.

ON BEHALF OF RESPONDENT: LHESLY NAVARRETE-FERNANDEZ

ON BEHALF OF DHS: ERIN KEELEY

ORAL DECISION AND ORDER OF THE IMMIGRATION JUDGE

The respondent has requested deferral of removal under the Convention aAgainst Torture. He expresses fear of returning to Jamaica. He has been in the United States since he was four years old and since approximately 1974. He was convicted in Federal District Court in the 7th Southern District of New York of conspiracy to possess with intent to distribute heroin and sentenced to life imprisonment. He was granted compassionate release in 2020 during the COVID pandemic and was subsequently transferred to Iimmigration detention after his compassionate release from

1

federal confinement.

The respondent acknowledges that because the Court found that he was convicted of an aggravated felony with a sentence exceeding five years, he is not eligible for asylum or withholding of removal and he is only eligible for deferral of removal under the Convention aAgainst Torture. This matter went to an Iindividual hearing today and the Court heard testimony from the respondent and also his sister, Grace Carrington.

There are virtually no facts in dispute in this case. The respondent in 1991 was shot two times by an individual who he says accused him of being an informant in a drug distribution case that had been recently charged. The respondent had become involved with individuals who were involved with drug distribution through the respondent's boxing training position. And eventually, the respondent himself was arrested while he was in the hospital after being shot and charged with conspiracy to distribute cocaine in connection with a distribution involving someone named George Rivera, who the respondent was training for a boxing competition. In October 1991, the respondent was convicted of conspiracy with to possess with intention to distribute 41 kilograms of heroin. At that time, his prior criminal history was minimal.

The respondent expressed a fear that if he returns to Jamaica, the Shower Posse, which is a criminal organization in Jamaica, or a group called the Spanglers would take retaliation against him for cooperating with the Ggovernment, even though the respondent did not actually cooperate against anyone involving any drug offenses. During the respondent's criminal prosecution, one of the lead members, the lead defendants, became a cooperating witness for the Government and testified against the respondent and various other defendants. The cooperator was eventually released from prison after a relatively short prison sentence, ands the respondent went on to

A031-257-320                              2                              January 27, 2021

serve over 30 years in prison.

The respondent had involvement with various other individuals who he believes would mark him as a member of a criminal organization in Jamaica if he were returned, and and would therefore endanger him. The respondent believes he is linked to the Spanglers by two people, Ward Johnson, who was murdered eight years ago, and Bancroft Chen. The respondent worked with Bancroft Chen in 1990 to produce a record. Bancroft Chen is also a cousin of the respondent on his mother's side, who was born in Jamaica. The respondent believes that Bancroft was involved with the Spanglers back in Jamaica.

The respondent expresses concern that he has no family in Jamaica, and really that he would be on his own there. Although his sister expres expressed willingness to sly is to help him initially to get settled, she is unable to help him over the long-term living there. The respondent believes that the Shower Posse controls access to food and medicine, central essential services, and any ability to obtain employment in Jamaica, and that they would find out that he was involved with Ward Johnson and that they may believe that he is involved in his murder as revenge for cooperating against him them., oOr, they may think that he is involved with the Spanglers because of his involvement with Bancroft Chen, who he calls also Junior. The respondent also expressed s concern that his order that granted compassionate release indicates that he cooperated with the Government on a case unrelated to his drug case involving the rape of a child, and that was one of the reasons the court gave for granting the compassionate release of the respondent.

The Court makes a part of this oral decision and incorporates here the Standard Language Addendum for Asylum, Withholding of Removal, and Protection under the Convention against Torture, but only the part of that document related to Convention

against Torture is relevant to these proceedings because he is not eligible for any other type of relief.

To qualify for protection under the Convention against Torture, the respondent must show that it is more likely than not that he would be tortured if he returned to Jamaica and the torture would have to by the government or with its acquiescence. ~~, and i~~It is his burden to show this substantial risk of being tortured. To determine whether torture is more likely than not to occur, the Court considers the past torture inflicted on the respondent, evidence that he could relocate to a part of the country where he would not be tortured, evidence of violations of human rights in the country of removal, and other relevant information.

The respondent has submitted a substantial amount of documentation and ~~,~~ country condition reports describing the human rights conditions in Jamaica. This is Exhibit 4, tabs D through O. The Court has reviewed all this material and does find that violent crime and gangs or criminal organizations are a substantial problem in Jamaica for people who are living there, and this is particularly true of people who are living in ~~the~~ poor areas of Jamaica.

The concern the Court has with the respondent's application is the link between the respondent's past association with potential members of criminal organizations or concerns that he may have been a cooperator, and what would happen, evidence that something bad would actually happen to the respondent if he returns to Jamaica. The bottom line is the Court finds the respondent's case entirely speculative. The Court understands why the respondent does not want to return to Jamaica. He has not been there since he was four years old. But the truth of the matter is the evidence that he would actually be harmed if he returned to Jamaica is really nonexistent. It is just essentially the respondent showed that he had some association a long time ago with

people who may have had some involvement with criminal organizations in Jamaica, and that criminal organizations are still prevalent in Jamaica now. But the respondent has not been threatened any time recently. In fact, the only threat he has identified came 20 years ago and was resolved quickly when the respondent proved that he actually was serving a life sentence and did not cooperate and did ~~not get a deal, did~~ not get a sentence consistent with cooperation in the case. The respondent's fear that he would be blamed for Ward's murder eight years ago when the respondent was incarcerated for 20 years before that and eight years after that is just entirely speculative. There really is no evidence that the respondent can point to in order to show that he would be targeted if he returned to Jamaica because of his past involvement with anybody. In short, because the respondent has simply failed to meet his burden and he failed to provide evidence that would lead this Court to believe that he faces a risk in returning to Jamaica greater than the risk of anyone else who lives there, the Court simply cannot grant the respondent's application, and therefore denies his application.

The respondent is not eligible for voluntary departure because of the nature of his conviction.

Therefore, the following orders will be entered.

### ORDERS

IT IS HEREBY ORDERED that the respondent is ordered removed from the United States to Jamaica pursuant to the charge in the Notice to Appear.

IT IS FURTHER ORDERED that the respondent's application for deferral of removal under the Convention against Torture be denied.

IT IS FURTHER ORDERED that the respondent's status as a permanent resident is hereby terminated.

Any appeal of this matter is due to the Board of Immigration Appeals no later than February 26, 2021.

**_Please see the next page for electronic_**

**_signature_**

COLE, SAMUEL B.
Immigration Judge

//s//

Immigration Judge COLE, SAMUEL B.

i:0e.t|eoir federation services|samuel.b.cole@usdoj.gov on March 22, 2021 at 6:57 PM GMT