**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROBERT PANTON,

          Petitioner,

               v.

WILLIAM JOYCE, *et al.*,

          Respondents.

Case No. 25 Civ. 2451 (KPF)

**RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S**
**EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York
86 Chambers St., 3rd Floor
New York, New York 10007
Telephone: 212-637-2810
Facsimile: 212-637-2786
*Attorney for Respondents*

ANTHONY J. SUN
Assistant United States Attorney
   *Of Counsel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND ......................................................................................................................... 1

    I.  PROCEDURAL HISTORY............................................................................................... 1

    II.  PETITIONER IS SUBJECT TO A FINAL ORDER OF REMOVAL AND WAS
        DETAINED IN ORDER TO EXECUTE THAT ORDER.................................................. 2

    III. DETENTION UNDER 8 U.S.C. § 1231 ........................................................................... 6

ARGUMENT................................................................................................................................ 8

    I.  PETITIONER IS UNLIKELY TO SUCCEED ON THE MERITS BECAUSE
        THE COURT LACKS JURISDICTION TO STAY HIS REMOVAL .............................. 9

    II.  PETITIONER'S DETENTION TO EFFECTUATE REMOVAL IS LAWFUL............. 14

    III. DUE PROCESS DOES NOT REQUIRE PETITIONER'S RELEASE........................... 17

    IV. PETITIONER CANNOT SHOW IRREPARABLE HARM............................................ 18

    V.  THE PUBLIC INTEREST IS SERVED BY ENFORCING THE IMMIGRATION
        LAWS ......................................................................................................................... 20

CONCLUSION.......................................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Andoh v. Barr,*
  No. 19 Civ. 8016 (PAE), 2019 WL 4511623 (S.D.N.Y. Sept. 18, 2019) ......................................... 13

*APA. Heckler v. Chaney,*
  470 U.S. 821 (1985) ..................................................................................................................... 16

*Asylum Seeker Advocacy Project v. Barr,*
  409 F. Supp. 3d 221–27 (S.D.N.Y. 2019) .................................................................................... 14

*Barros Anguisaca v. Decker,*
  393 F. Supp. 3d 344 (S.D.N.Y. 2019) ................................................................................. 10, 12-13

*Barros Anguisaca,*
  2019 WL 3244122 ........................................................................................................................ 19

*Bernardo ex rel. M&K Eng'g, Inc. v. Johnson,*
  814 F.3d 481 (1st Cir. 2016)(B) ................................................................................................... 16

*Borey v. Nat'l Union Fire Ins. Co.,*
  934 F.2d 30 (2d Cir. 1991) ........................................................................................................... 19

*Calderon v. Sessions,*
  330 F. Supp. 3d 944 (S.D.N.Y. 2018) .......................................................................................... 15

*Camarena v. Dir., ICE,*
  988 F.3d 1268 (11th Cir. 2021) .................................................................................................... 11

*Chupina v. Holder*
  570 F.3d 99 (2d Cir. 2009)(B) ........................................................................................................ 6

*Delgado v. Quarantillo,*
  643 F.3d 52 (2d Cir. 2011) ........................................................................................................... 10

*Duamutef v. INS,*
  386 F.3d 172–82 & n.8 (2d Cir. 2004) ......................................................................................... 11

*Elgharib v. Napolitano,*
  600 F.3d 597 (6th Cir. 2010) ........................................................................................................ 11

*Faiveley Transp. Malmo AB v. Wabtec Corp.,*
  559 F.3d 110 (2d Cir. 2009) ........................................................................................................... 8

*Fulton v. Mayorkas,*
  No. 25-cv-63 (JLS), 2025 WL 296051 (W.D.N.Y. Jan. 24, 2025) ............................................. 13

*Hamama v. Adducci,*
  912 F.3d 869–77 (6th Cir. 2018) .............................................................................................. 11-12

*Johnson v. Arteaga-Martinez,*
    596 U.S. 573 (2022) ................................................................................................ 6, 8

*K.K. v. Garland,*
    No. 23-CV-6281-FPG, 2025 WL 274431 (W.D.N.Y. Jan. 23, 2025) ........................... 12

*Kamerling v. Massanari,*
    295 F.3d 206 (2d Cir. 2002) ....................................................................................... 18

*Kentucky Dep't of Corrections v. Thompson,*
    490 U.S. 454 (1989) ................................................................................................... 17

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ...................................................................................................... 9

*Luna v. Holder,*
    637 F.3d 85 (2d Cir. 2011) ......................................................................................... 19

*Nken v. Holder,*
    556 U.S. 418 (2009) ......................................................................................... 8, 19, 20

*Olim v. Wakinekona,*
    461 U.S. 238 (1983) ................................................................................................... 17

*Panton v. Garland,*
    No. 21-2346, 2023 WL 4027534 (7th Cir. June 15, 2023) ......................................... 3, 4, 5

*Rauda v. Jennings,*
    55 F.4th 773 (9th Cir. 2022) ....................................................................................... 11

*Reno v. American-Arab Anti-Discrimination Committee*
    ("AADC"), 525 U.S. 471 (1999) ........................................................................... 11, 16

*Rodriguez v. Warden, Orange County Corr. Facility,*
    No. 23 Civ. 242 (JGK), 2023 WL 2632200 (S.D.N.Y. Mar. 23, 2023) ........................ 10

*S.N.C. v. Sessions,*
    No. 18 Civ. 7680 (LGS), 2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018) ...................... 15

*Sankara v. Barr,*
    No. 17-2257, 2019 WL 4943755 (2d Cir. May 8, 2019) ........................................ 12, 19

*Sean B.,*
    2020 WL 1819897 ...................................................................................................... 13

*Sheldon v. Sill,*
    49 U.S. 441 (1850) ........................................................................................................ 9

*Silva v. United States,*
    866 F.3d 938 (8th Cir. 2017) ...................................................................................... 11

iii

*Singh v. Napolitano,*
    500 F. App'x 50 (2d Cir. 2012) ........................................................... 12

*Smith v. Ashcroft,*
    295 F.3d 425 (4th Cir. 2002) ........................................................... 17

*Tavares-Tejada v. Mayorkas,*
    No. 22-cv-918 (JLS), 2022 WL 17413607 (W.D.N.Y. Dec. 5, 2022) ................ 13

*Tazu v. Att'y Gen. U.S.,*
    975 F.3d 292 (3d Cir. 2020) ........................................................... 11

*Torres-Jurado v. Biden,*
    No. 18 Civ. 3595 (AT), 2023 WL 7130898 (S.D.N.Y. Oct. 29, 2023) ............... 15

*Town of Castle Rock, Colo. v. Gonzales,*
    545 U.S. 748 (2005) ........................................................... 17

*Troy as Next Friend Zhang v. Barr,*
    822 F. App'x 38 (2d Cir. 2020) ........................................................... 12

*Tucker Anthony Realty Corp. v. Schlesinger,*
    888 F.2d 969 (2d Cir. 1989) ........................................................... 18

*United States," Zadvydas v. Davis,*
    533 U.S. 678 (2001) ........................................................... 14, 17

*Vasquez v. United States,*
    No. 15 Civ. 3946 (JGK), 2015 WL 4619805 (S.D.N.Y. Aug. 3, 2015) ............... 10

*Vidhja v. Whitaker,*
    19 Civ. 613 (PGG), 2019 WL 1090369 (S.D.N.Y. March 6, 2019) ........ 10, 14, 18

*Wang v. Ashcroft,*
    320 F.3d 130 (2d Cir. 2003) ........................................................... 6

*Yearwood v. Barr,*
    391 F. Supp. 3d 255 (S.D.N.Y. 2019) ........................................... 10, 14

*You v. Nielsen,*
    321 F. Supp. 3d 451 (S.D.N.Y. 2018) ........................................................... 15

*Yuen Jin v. Mukasey,*
    538 F.3d 143 (2d Cir. 2008) ........................................................... 17

*Yusov v. Shaughnessey,*
    671 F. Supp. 2d 523 (S.D.N.Y. 2009) ........................................................... 16

**Statutes and Regulations**

5 U.S.C. § 701 ............................................................................................................ 16

8 C.F.R. § 236.1 .......................................................................................................... 6

8 C.F.R. § 241.4 ........................................................................................... 7, 5, 7, 7, 14

8 C.F.R. § 241.6 .......................................................................................................... 8

8 C.F.R. § 241.13 ........................................................................................................ 7

8 C.F.R. § 241.14 ........................................................................................................ 7

8 C.F.R. § 1003.19 ...................................................................................................... 6

8 C.F.R. § 1236.1 ........................................................................................................ 6

8 C.F.R. §§ 241.4 ...................................................................................................... 16

8 U.S.C. 1227 ............................................................................................................. 3

8 U.S.C. § 1101 ........................................................................................................ 19

8 U.S.C. § 1184 ........................................................................................................ 19

8 U.S.C. § 1231 ........................................................................................ 15, 1, 6, 14, 16

8 U.S.C. § 1252 ........................................................................................ 6, 9, 10, 12, 16

21 U.S.C. §§ 821, 841 ................................................................................................. 3

28 U.S.C. § 2241 ................................................................................................. 1, 2, 9

The government respectfully submits this memorandum of law in opposition the emergency motion for a temporary restraining order, ECF No. 3, both filed by petitioner Robert Panton ("Petitioner") on March 25, 2025.

### PRELIMINARY STATEMENT

Petitioner is a native and citizen of Jamaica who was taken into custody by U.S. Immigration and Customs Enforcement ("ICE") upon the expiration of his deferred action and related revocation of his Order of Supervision ("OSUP") on March 25, 2025, pursuant to Immigration and Nationality Act ("INA") § 241(a), 8 U.S.C. § 1231(a), so that ICE could execute his 2021 final removal order that had already undergone full review by the judicial system. Petitioner now seeks an order from this Court enjoining ICE from detaining him and removing him while he seeks to reopen his closed and final removal proceedings on account of a U visa petition, but courts have repeatedly held that they lack jurisdiction to enter such an order, and even on the merits, because such a motion does not require his presence in the United States, due process does not preclude removal.

This Court should deny the motion.

### BACKGROUND

### I.    PROCEDURAL HISTORY

Petitioner is a noncitizen detained by ICE. On March 25, 2025, Petitioner initiated this action by filing a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241. ECF Nos. 1, 9 ("Pet.").[1] At the time of filing, Petitioner was detained by ICE in the Southern District of New

---

[1] With leave of court, Petitioner re-filed the petition for writ of habeas corpus on March 26, 2025, to include exhibits that were missing from the original filing. *See* ECF Nos. 5, 7.

York and was awaiting transfer to a detention facility in Batavia, New York. The Petition seeks the prohibition of his transfer from the Southern District of New York area during the pendency of these proceedings, an injunction against his removal from the United States, his release from custody, a declaration that removal prior to full adjudication of a petition for U nonimmigrant status would violate various provisions of law, an order directing the Board of Immigration Appeals ("BIA") to render a decision on his motion to reopen, an order directing the Department of Homeland Security ("DHS") to adjudication his U visa application to the extent of deciding whether he has made out a prima facie claim for relief and whether to grant him deferred action, and costs and attorneys' fees. *Id.* at 38–39.

Petitioner filed an emergency motion for a temporary restraining order and seeks an order from the Court restraining the government from effectuating Mr. Panton's removal from the district or from the United States. ECF Nos. 3 (motion), 3-1 (memorandum of law ("Mem.")), 3-2 (proposed order). Following telephonic conferences held on March 25, 2025, the Court entered an order setting a briefing schedule and a hearing date. ECF No. 7. The Court further temporarily enjoined respondents "from moving or transferring, or causing to be moved or transferred, Petitioner from the Batavia ICE facility until the earlier of a further order from the Court permitting such transfer or April 4, 2025." *Id.*

## II.    PETITIONER IS SUBJECT TO A FINAL ORDER OF REMOVAL AND WAS DETAINED IN ORDER TO EXECUTE THAT ORDER

Petitioner is a citizen of Jamaica who was admitted to the United States in October 1970 as a lawful permanent resident. Declaration of Alberto Morales dated March 28, 2025 ("Morales Decl."), ¶ 3. In 1992, Petitioner was convicted by a jury in the Southern District of New York of conspiracy to distribute and possession with intent to distribute 41 kilograms of heroin in

2

violation of 21 U.S.C. §§ 821, 841(a)(1), and 841(b)(1)(A), and the criminal judgment was entered in May 1994. *Id.* ¶ 4; *United States v. Panton*, No. 89 Cr. 346, Dkt. No. 569 (S.D.N.Y. Oct. 27, 1994). At the time, he was sentenced to life imprisonment, but in August 2020, his sentence was reduced to time served plus one week. Morales Decl. ¶¶ 4, 5; *United States v. Panton*, No. 89 Cr. 346, Dkt. No. 919 (S.D.N.Y. Aug. 4, 2020).

On August 11, 2020, Petitioner was released by the Federal Bureau of Prisons and ICE served him with a Notice to Appear, the charging document used to commence removal proceedings, charging him as removable pursuant to section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. 1227(a)(2)(A)(iii). Morales Decl. ¶ 6 & Ex. A. Petitioner was detained by ICE in Kentucky. *Id.* ¶ 7. On January 27, 2021, an immigration judge in Chicago, Illinois noted that Petitioner acknowledged that he was not eligible for asylum or withholding of removal, denied Petitioner's application for deferral of removal under the Convention Against Torture ("CAT"), terminated his lawful permanent resident status,[2] and ordered his removal to Jamaica. *Id.* ¶ 10 & Ex. B. Petitioner appealed to the BIA, which affirmed the denial of CAT protection on June 23, 2021. *Id.* ¶ 14 & Ex. C. Petitioner's removal order became administratively final after the BIA affirmance. Petitioner then filed a petition for review with the Court of Appeals for the Seventh Circuit, which denied his petition in June 2023. *Id.* ¶¶ 15, 20; *Panton v. Garland*, No. 21-2346, 2023 WL 4027534 (7th Cir. June 15, 2023).

In the meantime, while Petitioner's BIA appeal was pending, ICE released him from detention on an Order of Recognizance on April 30, 2021, and he was enrolled in the Intensive

---

[2] As such, Petitioner is not currently a lawful permanent resident. *Cf.* ECF No. 1, ¶ 79 (referring to the mere possibility of receiving lawful permanent resident status in the future).

Supervision Appearance Program (ISAP) with GPS ankle monitoring. Morales Decl. ¶¶ 12, 13. In August 2021, after he filed a petition for review of his removal order with the Seventh Circuit, Petitioner requested from ICE deferred action and a stay of removal for a period of one year; ICE granted the request for a discretionary stay of removal on October 1, 2021, expiring September 30, 2022. *Id.* ¶ 16. In light of the continued pendency of Petitioner's petition for review with the Seventh Circuit, in September 2022 ICE granted him a further discretionary stay of removal until September 26, 2023. *Id.* ¶ 18 & Ex. E. In the letter granting a stay of removal, Petitioner was expressly informed that "a Stay of Removal is not an immigration benefit or indefinite form of relief from removal." *Id.* Ex. E. In December 2022, ICE placed Petitioner on an OSUP that superseded his prior Order of Recognizance. *Id.* ¶ 19 & Ex. F.

In August 2023, following the denial of his petition for review and while he was still subject to ICE's previously granted discretionary stay of removal, Petitioner filed with ICE a further request to stay his removal and for deferred action. *Id.* ¶ 21. That request was denied, *id.*, and thus the stay of removal expired on September 26, 2023. ICE, however, granted Petitioner deferred action until March 26, 2024, to provide Petitioner with an opportunity to arrange for his removal on the condition that he report to ICE for evaluation and placement on an Alternative to Detention program with GPS monitoring. *Id.* & Ex. G.

While in this deferred action period, in December 2023 Petitioner filed a petition for U nonimmigrant status ("U visa") and waiver of inadmissibility with U.S. Citizenship and Immigration Services. *Id.* ¶ 23. Based on that application, in January 2024 Petitioner renewed with ICE his request for deferred action or a stay of removal. ICE approved the request for deferred action until September 26, 2024. *Id.* In the letter granting deferred action, Petitioner was

4

expressly informed that "deferred action is not an immigration benefit or indefinite form of relief from removal." *Id.* ¶ 24 & Ex. H. In April 2024, Petitioner filed a motion to reopen his immigration proceedings with the BIA, and it remains pending at this time. *Id.* ¶ 25.

In August 2024, Petitioner made another renewed request with ICE for deferred action or a stay of removal. *Id.* ¶ 26. In September 2024, ICE granted deferred action until March 25, 2025, and required Petitioner to report in person at 26 Federal Plaza on March 25, 2025. *Id.* ¶ 27. In the letter granting deferred action, Petitioner was again informed that "deferred action is not an immigration benefit or indefinite form of relief from removal." *Id.* Ex. I. In January 2025, Petitioner again renewed his request with ICE for an extension of deferred action; this request was denied on March 25, 2025. *Id.* ¶¶ 28, 30 & Ex. J. In February 2025, ICE Health Service Corps ("IHSC") issued a determination that health care specific to Petitioner's medical needs was available in Jamaica. *Id.* ¶ 29.

At the March 25, 2025, check-in, ICE took Petitioner into custody and served him with a Notice of Revocation of Release. *Id.* ¶ 31. The notice informed him that he would be detained by ICE pursuant to his 2021 removal order because "ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you." *Id.* ¶ 31 & Ex. K. Petitioner was given an informal interview upon revocation in accordance with 8 C.F.R. § 241.4(*l*) and 8 C.F.R. § 241.13(i). *Id.* ¶ 31. That same day, Petitioner filed a motion with the BIA seeking an emergency stay of removal; that request is pending with the BIA, and no stay has been entered as of this date. *Id.* ¶ 33.

Also on March 25, 2025, IHSC medically cleared Petitioner for custody. *Id.* ¶ 32. After a review of Petitioner's medical records, the Buffalo Service Processing Center approved the

5

request for bed space to detain Petitioner. *Id.* On March 26, 2025, ICE transferred the Petitioner to Batavia, New York for detention at the Buffalo Service Processing Center. *Id.* ¶ 34. ICE has agreed to keep Petitioner at Batavia while awaiting removal and will, when permitted and able, remove him as soon as practicable directly from Batavia. *Id.*

## III.    DETENTION UNDER 8 U.S.C. § 1231

In general, once a noncitizen becomes subject to an administratively final removal order, the authority for his continued detention is pursuant to 8 U.S.C. § 1231(a). *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("The section at issue here, 8 U.S.C. § 1231(a), governs the detention, release, and removal of individuals 'ordered removed.'"); *Wang v. Ashcroft*, 320 F.3d 130, 145 (2d Cir. 2003) ("8 U.S.C. § 1231, governs the detention of aliens subject to final orders of removal."). "An order of removal is 'final' upon the earlier of the BIA's affirmance of the immigration judge's order of removal or the expiration of the time to appeal the immigration judge's order of removal to the BIA." *Chupina v. Holder*, 570 F.3d 99, 103 (2d Cir. 2009) (citing 8 U.S.C. § 1101(a)(47)(B)). Noncitizens may seek judicial review of a final removal order by timely filing a petition for review in the appropriate court of appeals. *See generally* 8 U.S.C. § 1252.

Section 1231 provides that noncitizens subject to final removal orders must be detained without a bond hearing during a 90-day "removal period." *See* 8 U.S.C. § 1231(a)(2). In addition, noncitizens like Petitioner here, who are ordered removed because of a criminal conviction for an aggravated felony, "may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6).

Noncitizens detained under § 1231(a) are not entitled to bond hearings before an immigration judge; instead, they receive custody reviews just prior to the expiration of the

removal period, *see* 8 C.F.R. § 241.4(c)(1), (h)(1)-(2), and, if they remain detained beyond the removal period, periodically thereafter, *see* 8 C.F.R. § 241.4(c)(2), (k). The regulations provide that ICE "shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section." 8 C.F.R. § 241.4(*l*)(2). Pursuant to this regulation, "release may be revoked in the exercise of discretion when, in the opinion of the revoking official: . . . (iii) [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) . . . any other circumstance[] indicates that release would no longer be appropriate." *Id.* The regulation does not provide any requirement of advance notice before an alien's release is revoked pursuant to section 241.4(*l*)(2).[3]

DHS has also enacted special review procedures for detained aliens under final orders of removal who have "provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). Pursuant to that regulation, ICE will release an alien who has successfully made such a showing (absent special circumstances justifying continued detention, as defined by 8 C.F.R. § 241.14), subject to appropriate conditions of release. 8 C.F.R. § 241.13(g)(1). Section § 241.13(i)(2) of these regulations provides that "[t]he Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the

---

[3] In contrast, an alien whose release is revoked due to violations of the terms of the conditions of release under section 241.4(*l*)(1) must be notified at the time of revocation of the reasons for the revocation, and must be afforded an initial interview "promptly after his or her return to Service custody" to respond to the reasons stated in the notification. 8 C.F.R. § 241.4(*l*)(1).

reasonably foreseeable future." Moreover, ICE may, in its "discretion . . . grant a stay of removal or deportation for such time and under such conditions as [it] may deem appropriate." 8 C.F.R. § 241.6(a). However, while the agency is free to grant additional procedural rights in the exercise of its discretion, a federal court is not free to impose them if the agency has not chosen to grant them. *Arteaga-Martinez*, 596 U.S. at 582 (analyzing § 1231(a)(6)).

## ARGUMENT

The Court should deny the motion for a temporary restraining order because by seeking to restrain Petitioner's removal from the United States, it in substance seeks a stay of removal, and Petitioner cannot meet the standard for a stay of removal, not least of which because district courts lack jurisdiction to grant stays of removal.

"A stay [of removal] is not a matter of right, even if irreparable injury might otherwise result," but "is instead an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks omitted). To determine whether a stay of removal is appropriate, a court first considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits [and] (2) whether the applicant will be irreparably injured absent a stay." *Id.* at 434. These first two factors "are the most critical." *Id.* If an applicant satisfies the first two factors, a court "assess[es] the harm to the opposing party and weigh[s] the public interest," although "[t]hese factors merge when the Government is the opposing party." *Id.* at 435. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Id.* at 433–34. Where, as here, a party seeks temporary injunctive relief, the establishment of irreparable harm is the "single most important prerequisite" for issuance. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quotation marks and citations omitted).

The motion should be denied because (a) Petitioner is unlikely to succeed on the merits given the jurisdictional hurdles and ICE's compliance with applicable law, (b) Petitioner is still able to pursue his motion to reopen and U visa application, and thus there is no irreparable harm, and (c) the public interest favors the government.

## I.    PETITIONER IS UNLIKELY TO SUCCEED ON THE MERITS BECAUSE THE COURT LACKS JURISDICTION TO STAY HIS REMOVAL

It cannot reasonably be disputed that Petitioner challenges his detention and the execution of his final removal order: he seeks an order restraining the government's ability to effectuate his removal. But he is unlikely to succeed on his challenge because this Court lacks jurisdiction notwithstanding any other law, including 28 U.S.C. § 2241, to grant Petitioner a stay of removal or otherwise entertain a collateral attack on his final removal order.[4] *See* 8 U.S.C. § 1252(a)(5) ("a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal"), (b)(9) (so-called zipper clause channeling judicial review of all claims arising from removal proceedings to the courts of appeals), (g) ("no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action . . . [to] execute removal orders against any alien").

---

[4] The jurisdiction of the federal courts is presumptively limited. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Sheldon v. Sill*, 49 U.S. 441, 448 (1850) ("Congress, having the power to establish the courts, must define their respective jurisdictions."). They "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377 (internal citations omitted); *see also Sheldon*, 49 U.S. at 449 ("Courts created by statute can have no jurisdiction but such as the statute confers."). As relevant here, Congress divested district courts of jurisdiction to review challenges relating to removal orders and instead vested only the courts of appeals with jurisdiction over such claims.

"[A] request for stay of removal constitutes a 'challenge to a removal order,' and . . . accordingly district court lack jurisdiction to grant such relief." *Vidhja v. Whitaker*, 19 Civ. 613 (PGG), 2019 WL 1090369 (S.D.N.Y. March 6, 2019) (finding that § 1252(a)(5) deprived the district court of jurisdiction to grant a stay of removal); *accord Barros Anguisaca v. Decker*, 393 F. Supp. 3d 344, 350 (S.D.N.Y. 2019) (citing *Vidhja*). Indeed, the Second Circuit has held that the jurisdictional bar of § 1252(a)(5) applies equally to direct and indirect challenges to a removal order. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (inadmissibility waiver sought by plaintiff was inextricably linked to a removal order, and thus, was a challenge to the removal order).

In addition, "by its plain terms, 8 U.S.C. § 1252(g) strips district courts of jurisdiction over claims attacking the Government's decisions or actions to execute removal orders." *Yearwood v. Barr*, 391 F. Supp. 3d 255, 263 (S.D.N.Y. 2019); *see also Rodriguez v. Warden, Orange County Corr. Facility*, No. 23 Civ. 242 (JGK), 2023 WL 2632200, at *4 (S.D.N.Y. Mar. 23, 2023); *Vasquez v. United States*, No. 15 Civ. 3946 (JGK), 2015 WL 4619805, at *3 (S.D.N.Y. Aug. 3, 2015) ("District courts within this Circuit and across the country have routinely held that they lack jurisdiction under § 1252 to grant a stay of removal." (collecting cases)); *id.* at *4 (only claims that are "independent of *any* challenges to removal orders" survive the jurisdictional bar (emphasis added)). Congress enacted unambiguous language that provides that "no court" has jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action" to "execute removal orders," "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 [mandamus] and 1651 [All Writs Act] of such title." 8 U.S.C.

§ 1252(g); *see Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471, 482 (1999).

Every circuit court of appeals to address this issue had held that § 1252(g) eliminates subject matter jurisdiction over habeas challenges, including constitutional claims, to an arrest or detention for the purpose of executing a final removal order. *See Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022) (holding that it lacked jurisdiction over noncitizen's habeas challenge to the exercise of discretion to execute his removal order); *Camarena v. Dir., ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to consider 'any' cause or claim brought by an alien arising from the government's decision to execute a removal order. If we held otherwise, any petitioner could frame his or her claim as an attack on the government's *authority* to execute a removal order rather than its *execution* of a removal order."); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 297 (3d Cir. 2020) (observing that "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it" and that "[b]oth are covered by the statute"); *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (§ 1252(g) applies to constitutional claims arising from the execution of a final order of removal, and language barring "*any* cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim"); *Elgharib v. Napolitano*, 600 F.3d 597, 602 (6th Cir. 2010) ("[A] natural reading of 'any other provision of law (statutory or nonstatutory)' includes the U.S. Constitution." (quoting 8 U.S.C. § 1252(g))); *see also Duamutef v. INS*, 386 F.3d 172, 181–82 & n.8 (2d Cir. 2004) (holding that district court lacked mandamus jurisdiction due to § 1252(g) to compel ICE to take custody over state prisoner and execute final removal order, but declining to address whether § 1252(g) barred habeas claims); *Hamama v. Adducci*, 912 F.3d 869, 874–77

(6th Cir. 2018) (vacating district court's injunction staying removal, concluding that § 1252(g) stripped district court of jurisdiction over removal-based claims and remanding with instructions to dismiss those claims).

The Court of Appeals for the Second Circuit has similarly held in unpublished decisions that 8 U.S.C. § 1252(g), by its terms, strips district courts of jurisdiction over habeas claims arising from the execution of removal orders. *See, e.g.*, *Troy as Next Friend Zhang v. Barr*, 822 F. App'x 38, 39 (2d Cir. 2020) (affirming that 8 U.S.C. § 1252(g) barred district court jurisdiction over habeas petition seeking a stay of removal, which "is a request to delay the execution of a removal order"); *Singh v. Napolitano*, 500 F. App'x 50, 52 (2d Cir. 2012) (holding that attempt to "employ[] a habeas petition effectively to challenge the validity and execution of [a] removal order" is "jurisdictionally barred").

It matters not that Petitioner is seeking a stay of removal on account of a pending motion to re-open and a pending application for U visa. To the extent Petitioner claims a due process right to have those adjudicated, as Petitioner recognizes, they can be adjudicated even if he is removed, and in any event the Court lacks jurisdiction to issue a stay. *See, e.g.*, *Sankara v. Barr*, No. 17-2257, 2019 WL 4943755, at *2 (2d Cir. May 8, 2019) ("A pending U visa application does not affect [ICE's] ability to execute a final order of removal, although Petitioner may apply for a stay of removal from Immigration & Customs Enforcement. If Petitioner is removed, he may continue to pursue his U visa application from abroad." (citations omitted)); *K.K. v. Garland*, No. 23-CV-6281-FPG, 2025 WL 274431, at *2 (W.D.N.Y. Jan. 23, 2025) (rejecting argument that a purported challenge to the government's "legal authority" to remove petitioner while his T visa and U visa applications were pending was not barred by § 1252(g)); *Barros*

*Anguisaca v. Decker*, 393 F. Supp. 3d 344, 350 (S.D.N.Y. 2019) (court lacked jurisdiction to enter stay of removal where petitioner argued he sought only a meaningful opportunity for his motion to reopen be heard by the BIA and not be removed); *Andoh v. Barr*, No. 19 Civ. 8016 (PAE), 2019 WL 4511623, at *4 (S.D.N.Y. Sept. 18, 2019) ("Whether or not [petitioner's] motion to reopen before the BIA has any prospect of success, . . . the Court does not have jurisdiction over his claim here for a stay or removal pending resolution of the motion to reopen."); *id.* ("If resolved in [petitioner's] favor, the motion to reopen would have the effect of vacating his underlying order of removal. And [petitioner], in seeking a stay of the pending removal order until that point, is unavoidably, bringing an indirect challenge to his removal order. Section 1252(a)(5) therefore strips this Court of jurisdiction to hear his motion."); *Sean B.*, 2020 WL 1819897, at *1 ("Although the petitioner argues that he seeks not to nullify, but to stay, a removal order to protect his due process rights, a stay would render the removal order invalid and is an indirect challenge to the removal order."). Nor does seeking a stay of removal based on claimed medical needs sidestep the jurisdictional bar. *See, e.g.*, *Fulton v. Mayorkas*, No. 25-cv-63 (JLS), 2025 WL 296051, at *4–*5 (W.D.N.Y. Jan. 24, 2025) (§ 1252(g) bars action where petitioner sought stay of removal to Jamaica because of scheduled dialysis treatment); *Tavares-Tejada v. Mayorkas*, No. 22-cv-918 (JLS), 2022 WL 17413607, at *4–*5 (W.D.N.Y. Dec. 5, 2022) (§ 1252(g) bars request for temporary restraining order and stay of removal where petitioner alleged that removal without medical clearance violated his rights).

Petitioner's request for a stay of removal in this Court, then, is barred by § 1252, and this Court may not stay or enjoin the execution of his final removal order. *See, e.g.*, *Sean B. v. Wolf*, 20 Civ. 550 (JGK), 2020 WL 1819897, at *1 (S.D.N.Y. Apr. 10, 2020) ("Courts in the Second

Circuit have consistently held that 8 U.S.C. §§ 1252(a)(5) and (g) strip district courts of jurisdiction over requests to stay removal."); *Vidhja*, 2019 WL 1090369, at *4 (section 1252(g) deprives the district court of jurisdiction to grant a stay of removal pending resolution of a motion to reopen); *Yearwood*, 391 F. Supp. 3d at 263–64 (finding direct challenge to removal order where motion challenged process by which petitioner had been ordered removed and holding that petitioner could not avoid jurisdictional bar by asserting APA claim); *cf. Asylum Seeker Advocacy Project v. Barr*, 409 F. Supp. 3d 221, 224–27 (S.D.N.Y. 2019) (no jurisdiction over claims seeking to enjoin removal). Indeed, Petitioner is already pursuing relief through the appropriate channel: in addition to his motion to reopen, he has filed a motion for stay of removal with the BIA. But this Court lacks jurisdiction to grant him the relief he seeks.

## II.    PETITIONER'S DETENTION TO EFFECTUATE REMOVAL IS LAWFUL

Even apart from the jurisdictional bars, Petitioner is unlikely to prevail on the merits because his detention, in furtherance of the execution of his valid, final 2021 removal order, is in accordance with all applicable statutes and regulations.

First, ICE has the statutory authority to detain Petitioner, because those who are ordered removed because of a criminal conviction may be detained under 8 U.S.C. § 1231(a)(6) for as long as is "reasonably necessary to bring about that alien's removal from the United States," *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).

Second, ICE has the authority under the relevant regulations to revoke Petitioner's release under the OSUP after his deferred action expired. ICE "shall have authority, in the exercise of discretion, to revoke release and return to [ICE] custody an alien previously approved for release under the procedures in this section." 8 C.F.R. § 241.4(*l*)(2). The regulation does not provide any requirement of advance notice before an alien's release is revoked pursuant to

14

section 241.4(*l*)(2). Rather, notice of the reasons for the revocation must be provided only for aliens who violated a condition of release, and only "upon revocation." *Id.* § 241.4(*l*)(1). Moreover, an alien whose revocation was prompted by the violation of a term of release must be allowed "an initial informal interview promptly after [his] return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.*

In this case, Petitioner's discretionary stays of removal had expired long before his detention; his deferred action expired the day he was detained. There was simply no statutory or regulatory impediment to his re-detention at that point, because Petitioner's release was revoked not for violating the terms of his order of supervision pursuant to section 241.4(*l*)(1), but rather was revoked in the exercise of ICE's discretion pursuant to section 241.4(*l*)(2) and for the purpose of executing his valid removal order. And even though the notice requirements of section 241.4(*l*)(1) were not applicable in this case, in revoking Petitioner's release, ICE complied with these procedural requirements by providing a written notice of the reasons for revocation on the day he was detained and conducting an informal interview after he was informed of the revocation. *See* Morales Decl. ¶ 30 & Ex. K. Thus, ICE acted permissibly and in accordance with its statutory and regulatory authority when taking Petitioner into custody to effectuate his removal.[5]

_____

[5] The minority of cases in this district that hold otherwise are wrongly decided on the jurisdictional questions, and in any event, are distinguishable. *See Torres-Jurado v. Biden*, No. 18 Civ. 3595 (AT), 2023 WL 7130898 (S.D.N.Y. Oct. 29, 2023) (petitioner had an "indefinite stay" of removal as part of an OSUP that was later revoked); *S.N.C. v. Sessions*, No. 18 Civ. 7680 (LGS), 2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018) (T visa application, without motion to re-open, would not nullify removal order); *Calderon v. Sessions*, 330 F. Supp. 3d 944 (S.D.N.Y. 2018) (access to provisional unlawful presence waiver for alien with no criminal history available to those even with a final order of removal); *You v. Nielsen*, 321 F. Supp. 3d 451

Moreover, any APA challenge would fail as well. ICE's decision to detain Petitioner and to execute his removal order is one of those "discretionary determinations" that is not a proper basis "for separate rounds of judicial intervention outside the streamlined process designed by Congress." *AADC*, 525 U.S. at 471. In any event, as a discretionary decision, it is absolutely precluded from review under the APA. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); 5 U.S.C. § 701(a)(2) (noting that there is no APA review of agency action committed to agency discretion by law). Furthermore, Petitioner's APA challenge to ICE's discretionary decision to revoke his supervised release fails under § 701(a)(1) because the Court is deprived of subject-matter jurisdiction by virtue of 8 U.S.C. § 1252(a)(2)(B)(ii). *See, e.g.*, *Bernardo ex rel. M&K Eng'g, Inc. v. Johnson*, 814 F.3d 481, 485 (1st Cir. 2016) (holding that the judicial review bar at § 1252(a)(2)(B)(ii) applied as a result of statutory terms suggesting a grant of administrative discretion). The INA and relevant regulations make clear that revocation of supervised release is within the agency's discretion. *See* 8 U.S.C. § 1231(a)(6); 8 C.F.R. §§ 241.4(*l*)(2), 241.13(i). Indeed, courts that have considered habeas challenges to post-removal-order orders of supervision have accorded administrative authorities "wide latitude" to impose such orders. *E.g.*, *Yusov v. Shaughnessey*, 671 F. Supp. 2d 523, 528 (S.D.N.Y. 2009) (citing cases). Accordingly, to the extent that Petitioner challenges the substance of ICE's discretionary decision with regard to his order of supervision (*i.e.*, to revoke it and re-detain him), the Court should decline to consider such challenge, as it lies squarely within the discretion of the agency.

---

(S.D.N.Y. 2018) (noncitizen subject to final removal order, but without criminal history, who was released on prior to entry of final removal order). In this case, the Petitioner's discretionary stays had expired, as had deferred action, he was subject to removal because of a criminal conviction for an aggravated felony, and his release on an OSUP was after entry of a final removal order and thus pursuant to 8 U.S.C. § 1231.

III.    **DUE PROCESS DOES NOT REQUIRE PETITIONER'S RELEASE**

Petitioner's due process claim is also unlikely to succeed on the merits because of the discretionary nature of the decision to revoke his OSUP. The Due Process Clause does not protect a "benefit . . . if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005); *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462-63 (1989); *see Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). The protections of the Due Process Clause categorically do not attach to liberty and property interests that are granted at the discretion of government officials. The Second Circuit and other circuit courts have applied the Supreme Court's holdings on the reach of the Due Process Clause in the particular context of discretionary relief for aliens subject to final orders of removal and unequivocally concluded that "[a]n alien has no constitutionally-protected right to discretionary relief or to be eligible for discretionary relief." *Yuen Jin v. Mukasey*, 538 F.3d 143, 157 (2d Cir. 2008) (quoting *Oguejiofor v. Attorney General of U.S.*, 277 F.3d 1305, 1309 (11th Cir. 2002) (emphasis omitted)); *see Smith v. Ashcroft*, 295 F.3d 425, 430 (4th Cir. 2002) (addressing former statutory immigration scheme).

Ultimately, due process does not preclude Petitioner's detention when removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 689. ICE has detained Petitioner the purpose of executing his removal, informed him that ICE determined that he can be expeditiously removed, is actively seeking travel documents, and intends to remove him as soon as practicable pursuant to the 2021 removal order.[6] Petitioner, however, has been detained for only three days as of this

---

[6] To the extent Petitioner argues that he is not a flight risk because of prior compliance with his OSUP, Mem. at 11, the situation is materially different than it was before. As it stands today, he

filing, hardly an unconstitutionally prolonged period of detention. *Cf. Vidhja*, 2019 WL 1090369, at *6 (*Zadvydas* "addresses aliens subject to removal who have been <u>detained</u> for more than six months after the 90-day statutory removal period" (emphasis in original)). Apart from this Court's limited stay for purposes of adjudicating his motion, there is no legal impediment to Petitioner's removal; he is subject to a valid removal order entered after full removal proceedings and Article III review, his petition for review was denied years ago, and the BIA has not ordered a stay of his removal. Due process does not require that Petitioner be permitted to remain in the United States while he seeks discretionary relief, despite his final order of removal, that may still be pursued even if he is removed.

## IV.    PETITIONER CANNOT SHOW IRREPARABLE HARM

Because Petitioner can pursue his U visa application and his motion to reopen even if he is removed, he cannot show irreparable harm. "The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal quotation marks and citations omitted). A movant can establish irreparable harm if she shows that "there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Id.* (internal quotation marks and citations omitted). Monetary harm is insufficient; a party seeking a preliminary injunction must show "evidence of damage that cannot be rectified by financial compensation." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). Moreover, the irreparable harm alleged must be shown to be

---

is no longer subject to deferred action, it having expired, and ICE has affirmatively indicated its intent to remove him.

18

"actual and imminent, not remote or speculative." *Kamerling*, 295 F.3d at 214. The "mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991). Additionally, as relevant here, "[a]lthough removal is a serious burden for many aliens, it is not categorically irreparable[.]" *Nken*, 556 U.S. at 435.

Petitioner asserts two irreparable harms, but neither meets the demanding standard. First, he invokes constitutional harm because he claims that review of his U visa and motion to reopen "will be foreclosed if he is removed." Mem. at 22. But that is simply not true, as he can pursue his U visa from abroad, *Sankara*, 2019 WL 4943755, at *2, and Petitioner himself alleges only that it could be "more difficult" to pursue the motion to reopen from outside the United States, Mem. at 16, not that it is foreclosed, *see Luna v. Holder*, 637 F.3d 85, 100 (2d Cir. 2011) (noncitizens abroad may pursue motions to reopen); *Barros Anguisaca*, 2019 WL 3244122, at *6 (similarly recognizing that, "[u]nder normal circumstances, removal does not bar a petitioner from filing a post-removal motion to reopen removal proceedings from outside the United States"). In addition, a U visa is not automatically granted to qualifying noncitizens; it is statutorily committed to the discretion of the Secretary of Homeland Security. 8 U.S.C. § 1101(a)(15)(U). Similarly, work authorization and deferred action for those with pending, bona fide applications is discretionary as well, and thus there is no protected interest in such relief. 8 U.S.C. § 1184(p)(6) (the Secretary "may" grant work authorization).[7]

---

[7] Similarly, the portion of the USCIS Policy Manual cited by Petitioner notes that such relief requires not just a bona fide petition, but also that it "merits a favorable exercise of discretion."

Second, although ICE recognizes that Petitioner has certain medical needs due to chronic pain, it does not appear to be of a nature that would constitute more than a mere possibility of "dangerous[] jeopard[y]" to his health or a life-threatening condition were he to be removed in accordance with his 2021 removal order.[8] Indeed, ICE conducted a review of Petitioner's medical needs and the availability of health care in Jamaica, and it identified care specific to his needs that was available in Jamaica. Morales Decl. ¶ 29. ICE further considered his medical needs when identifying a place of detention, and after clearing him for custody, they placed him in a facility that could accommodate his needs. *Id.* ¶ 32. More fundamentally, the claimed harm is not because of any unlawful conduct by the government, but rather, the consequence of the execution of his lawful, final removal order.

## V. THE PUBLIC INTEREST IS SERVED BY ENFORCING THE IMMIGRATION LAWS

"Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. In the present case, the harms to the opposing party and the public interest weigh against granting petitioner a stay of his removal.

---

[8] The cited medical records, Mem. at 23, appear to refer to an undated set of pre-procedure instructions indicating a lower back epidural scheduled for March 27, 2025; an April 2024 report from Dr. Steven Struhl recommending arthroscopy and debridement; an October 2023 letter concerning chronic back pain consistent with spondylolysis for which his ankle monitor "might have some role"; March 2024 and April 2022 MRI reports; a September 2023 evaluation by a Dr. Joyce Goldenberg that recommended physical therapy; and a certificate of disability from March 15 to April 26, 2022, due to a motor vehicle accident.

Granting a stay of removal will harm the government and the public by delaying the enforcement of United States law. "There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of United States law.'" *Nken*, 556 U.S. at 436 (quoting *AADC*, 525 U.S. at 490) (alterations in original). The *Nken* Court was clear that "[i]n considering [the merged final two stay factors], courts must be mindful that the Government's role as the respondent in every removal proceeding does not make the public interest in each individual one negligible." *Nken*, 556 U.S. at 435.

Petitioner has received more than sufficient process through his removal proceedings, and he has received all of the process that was due. Petitioner was duly convicted of an aggravated felony, and as a result, he was ineligible for most relief in immigration court. Nevertheless, the immigration court considered his applications for relief, Petitioner was able to appeal the decision to the BIA, and Petitioner further received review from a Court of Appeals. Moreover, his more recent motion to reopen and U visa application can be adjudicated whether or not he is present in the United States. All the while, ICE has exercised its discretion to grant him release, first on an Order of Recognizance, and later after his removal order became administratively final, on an OSUP. And ICE further granted him, in its discretion, stays of removal and deferred action, but those have all now expired by their own terms, and ICE has declined to grant any additional stay or deferred action. ICE properly revoked the OSUP and detained him so as to effect his removal. The extensive nature of his proceedings, plus the documented time-limited

exercises of ICE discretion, combined with the ability to pursue his remaining avenues even if he is removed, all weigh in favor of the public interest in enforcing his removal order.[9]

## CONCLUSION

For the foregoing reasons, the Court should deny Petitioner's motion for temporary restraining order.

Dated: New York, New York
     March 28, 2025

                          Respectfully submitted,

                          MATTHEW PODOLSKY
                          Acting United States Attorney
                          Southern District of New York
                          *Attorney for Respondents*

By:   s/ Anthony J. Sun
                          ANTHONY J. SUN
                          Assistant United States Attorney
                          86 Chambers Street, 3rd Floor
                          New York, New York 10007
                          Tel.: 212-637-2810
                          anthony.sun@usdoj.gov

---

[9] To the extent Petitioner considers the execution of his removal order to result in "erroneous deportation," Mem. at 21, that is misguided. The possibility of discretionary relief in the future does not undermine the validity of his removal order or make any removal pursuant to that order erroneous.

22

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 6,919 words.

23