UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Robert PANTON,** <br><br> *Plaintiff-Petitioner,* <br><br> v. <br><br> **William Joyce**, Acting New York Field Office Director for U.S. Immigration and Customs Enforcement; **Sirce E. OWEN**, acting Director of the Executive Office for Immigration Review (EOIR); **Pamela Jo Bodi**, Attorney General of the United States; **Kristi NOEM**, in him official capacity as Secretary, **U.S. Department of Homeland Security** and **U.S. Immigration and Customs Enforcement**, <br><br> *Defendants-Respondents.* | Case No. 1:25-cv-02451 |

**PETITIONER'S MEMORANDUM OF LAW IN REPLY**

1

The Government concedes that Petitioner Robert Panton ("Petitioner" or "Mr. Panton"), did not violate the terms of supervision, and was not a danger to the community nor a flight risk. Mr. Panton did not change his stripes on March 25, 2025. The Government made a sudden change of direction, and redetained Mr. Panton, without affording opportunity to be heard and without complying with its own regulations.

The Government's primary argument is that the Court should not review the legality of its actions because they are tied to removal. This is incorrect.

First, the decision to revoke Mr. Panton's order of supervision was a decision to detain; as such it is reviewable via habeas corpus. It is true that the government claims it took this action in order to try to effectuate removal. But immigration detention must always have the "basic purpose" of furthering removal. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). The claim that 8 U.S.C. 1252(g) bars this action thus proves far too much.

Second, it is well-established that federal courts have authority to issue stays of removal without falling afoul of 1252(g). Once the Court assesses that it has jurisdiction to review the claims presented in this action, it is not precluded from employing stays of removal to protect its jurisdiction and to avoid irreparable harm.

Third, the Government argues that the Court lacks power to remedy unreasonably delayed agency action because Mr. Panton has been ordered removed. Numerous courts have held otherwise, and the Government offers no cogent argument for why Administrative Procedure Act review is stripped in this context. Mr. Panton certainly does argue that agency actions in his case have been unreasonably delayed, in part, because the relevant agencies charged with adjudicating applications have acted without haste, while DHS seeks to enforce removal with sudden alacrity. But this is simply an application of the longstanding factors pertinent to agency delay claims.

I. **Factual Issues, Undisputed**

The facts in this matter appear uncontested. *Compare Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003). Mr. Panton notes the following facts:

- Mr. Panton was initially sentenced to life imprisonment, but was resentenced in 2020, and was found to have been rehabilitated. United States v. Panton, No. 89 Cr. 346, Dkt. No. 919 (S.D.N.Y. Aug. 4, 2020).
- Mr. Panton was released from immigration detention on April 30, 2021, while agency removal proceedings were nonfinal. Resp. Mem. 3-4.
- In December 2022, after the agency removal order was administratively final, Mr. Panton was placed on an "Order of Supervision" which superseded the earlier release on recognizance. Resp. Mem. 4.
- After being released from ICE detention, Mr. Panton complied with all orders by the immigration agency, including avoiding any criminal activity. To the contrary, he made positive contributions to society, working to help local youth.
- When redetained, Mr. Panton was not found to have violated any of the terms of his supervision. Resp. Mem. Tab 10-11 (hereinafter Tab 10-11).
- When redetained, Mr. Panton was not found to be a danger to the community nor a flight risk.
- The decision to terminate the Order of Supervision was made by Alberto Morales, Jr., Associate Field Office Director. Tab 10-11.
- The sole stated reason given for the redetention was that ICE believed it would be able to promptly effectuate removal. *Id.*
- After deciding to redetain, the Department of Homeland Security (DHS) afforded Mr. Panton an informal opportunity to respond. *Id.*
- While Mr. Panton appeared for his March 25, 2025, interview with counsel, *see* Resp. Mem. Tab 10-10 (addressed to counsel), DHS did not include counsel in the informal response to its revocation decision.
- Mr. Panton contended, without opposition, that pertinent agency directives required steps, including expedited handling by other DHS components; steps apparently undone prior to redetention.

## II. Jurisdiction

Mr. Panton has alleged two distinct bases for federal court jurisdiction, because he challenges two distinct types of agency action or inaction.

### A. Habeas Corpus

Inasmuch as Mr. Panton challenges the decision to *redetain* him, that claim likely sounds in habeas corpus. The Government does not contest that Petitioner named a proper custodian, and was detained in this district at time of filing. The Government claims that such a habeas petition is barred by 1252(g).

Congress amended 1252(g) after *I.N.S. v. St. Cyr*, 533 U.S. 289, 314 (2001), to bar habeas and other federal claims for matters within the scope of the 1252(g) bar. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 105 (2d Cir. 2008). But 1252(g) must be read narrowly, to only apply to the three actions listed in that statute: including, as pertinent here, the decision to "execute" removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 488 (1999).

"At its historical core," the habeas writ "served as a means of reviewing the legality of Executive detention." *St. Cyr*, 533 US. at 301. The decision to detain after a removal order is not purely a decision about executing removal orders. Thus, courts have rejected arguments that 1252(g) bars review over a post-order custody: "nothing in § 1252(g) precludes review of the decision to confine." *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000).

The Government cites several cases, but only one even arguably supports its argument that 1252(g) bars the Court from reviewing the agency's *detention* decision.[1] In *Tazu v. Att'y. Gen.*

---

[1] Rauda v. Jennings, 55 F.4th 773, 778 (9th Cir. 2022) (holding that it lacked jurisdiction over noncitizen's habeas challenge to the exercise of discretion to execute his removal order); Camarena v. Dir., ICE, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to

*U.S.*, the government obtained a passport for a noncitizen, and detained him three days later. 975 F. 3d 292, 298 (3d Cir. 2024). The Third Circuit held that "[r]e-detaining Tazu was simply the enforcement mechanism the Attorney General picked to execute his removal." *Id*. at 298-99. Here, by contrast, the Government has never claimed to have obtained a passport or other travel document sufficient to deport Mr. Panton. To the contrary, it's Petitioner's understanding that DHS has represented to the BIA that that removal is not imminent enough to qualify as an emergency. BIA Pract. Man. Chapter 6.3(c)(2)(B), *available at* https://www.justice.gov/eoir/reference-materials/bia/chapter-6/3 (treating stay as non-emergency where noncitizen "not facing removal within the next 3 business days"). The Government claims it is actively seeking documents to effectuate removal, and it wishes to detain Mr. Panton in the meantime. Resp. Memo. 17. This appears to be a categorical agency approach, not specific to Mr. Panton. DHS Feb. 18, 2025, Directive, *D.V.D. v. US DHS*, *et al.*, 1:25-cv-10676-BEM Dkt. 1-4 (D. Mass. Mar. 23, 2025). The Government suggests no particular time frame for obtaining those documents.

Assuming arguendo that some detention may be unreviewable action to execute removal, the Seventh Circuit's reasoning is likewise true: other post-order detention is not. Mr. Panton believes the line is best drawn between cases where the agency has immediate plans to deport and detention to facilitate some future removal effort. Indeed, that was the reasoning of the Third

---

consider 'any' cause or claim brought by an alien arising from the government's decision to execute a removal order. If we held otherwise, any petitioner could frame his or her claim as an attack on the government's authority to execute a removal order rather than its execution of a removal order."); Tazu v. Att'y Gen. U.S., 975 F.3d 292, 297 (3d Cir. 2020) (observing that "the discretion to decide whether to execute a removal order includes the discretion to decide when to do it" and that "[b]oth are covered by the statute"); Silva v. United States, 866 F.3d 938, 941 (8th Cir. 2017) (1252(g) barred FTCA claim where government deported someone in violation of judicial stay); Elgharib v. Napolitano, 600 F.3d 597, 602 (6th Cir. 2010) (claim that removal order was improper);

Circuit in *Tazu*: "to perform or complete a removal, the Attorney General must exercise his discretionary power to detain an alien *for a few days*." *Id*. at 298.

The Sixth Circuit case of *Hamama v. Adducci* is relevant in this regard, though also distinguishable. The *Hamama* petitioners raised two types of challenges: they challenged both the enforceability of their removal orders and their detention. 912 F. 3d 869 (6th Cir. 2018). The Sixth Circuit agreed, over a dissent, that 1252(g) barred the challenges to the removal orders; but it held that 1252(g) did not bar consideration of the detention claims. *See id*. at 877-880.

In this case, the decision to detain was just that: a detention decision. Habeas review is therefore proper. Mr. Panton explains *infra* that the detention decision violated the regulation and the constitution.

### B. Unreasonable Delay: Federal Question Review

Mr. Panton also challenges agency inaction. Specifically, he sought a U visa from USCIS, which remains undecided; and he sought reopening from the Board of Immigration Appeals (BIA). But while DHS felt an urgent desire to detain, putatively to seek removal, the agencies apparently feel no such urgency in deciding the related matters.

The Government does not address counts V-VIII in its legal memorandum. The Government has not yet filed its Answer, but for present purposes the Government offers no argument that the Court lacks authority over these matters. Mr. Panton cited 28 U.S.C. § 1331 (jurisdiction), as well 28 U.S.C. §§ 2201-2202, 5 U.S.C. § 702, and 28 U.S.C. § 1361 (authority) and 5 U.S.C. § 702 (sovereign immunity).

The only counterargument raised is that the Court lacks authority to issue a stay of removal to consider the matters appropriately before the Court. That argument fails, as explained *infra*.

### C. The Government Overstates Limitations on Remedies, Which Do Not Go to Jurisdiction in Any Event.

The Government's principal argument is that either the Court lacks authority to stay removal in a matter over which it has jurisdiction, or that the Court's jurisdiction is somehow ousted by the stay request.

Interestingly, nowhere in this section of the brief does the Government cite the Supreme Court's decision regarding stays of removal, *Nken v. Holder*, 556 U.S. 418, 426 (2009). The Supreme Court's reasoning is directly apposite:

> An appellate court's power to hold an order in abeyance while it assesses the legality of the order has been described as "inherent," preserved in the grant of authority to federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," All Writs Act, 28 U.S.C. § 1651(a)....
> The authority to hold an order in abeyance pending review allows an appellate court to act responsibly.... The ability to grant interim relief is accordingly not simply "[a]n historic procedure for preserving rights during the pendency of an appeal," but also a means of ensuring that appellate courts can responsibly fulfill their role in the judicial process.

*Nken*, 556 U.S. at 426 (citations omitted); *see also Scripps–Howard Radio, Inc. v. FCC*, 316 U.S. 4, 13 (1942) (describing stays of agency action as "so firmly imbedded in our judicial system, so consonant with the historic procedures of federal appellate courts" that "we should not lightly ... withhold from a reviewing court the power to save the public interest from injury or destruction while an appeal is being heard").

The Government cites several unpublished decisions in support of its broad contention, but those decisions cannot support the weight they are asked to bear. It appears true that some litigation has sought only to stay removal, without advancing claims within district court jurisdiction. *See Vidhja v. Whitaker*, No. 19 CIV. 613 (PGG), 2019 WL 1090369, at *2 & n.5 (S.D.N.Y. Mar. 6, 2019) (explaining that basis for the claim was "not entirely clear" and describing a letter brief only describing other court decisions).

7

A closer review of the cases cited by the Government shows that district courts generally found themselves barred from considering seeking *only* on a stay of removal. Put another way, where a federal court has jurisdiction over the claim, it has power under 1651(a) and *Nken* to stay removal; but if the complaint has no substance other than delaying removal, courts lack jurisdiction and thus authority to grant a stay. For instance, in *Barros Anguisaca v. Decker*, a noncitizen filed a habeas petition, but did not file in the district of confinement, and thus had to amend his complaint to avoid raising core habeas challenges. 393 F. Supp. 3d 344, 347-48 (S.D.N.Y. 2019). The court found that the non-core claims were not cognizable.

Similarly, the cited Court of Appeals decisions involved district court actions aimed only at securing a stay of removal. In *Rauda v. Jennings*, the noncitizen did not challenge unreasonable delay, nor did he file a habeas petition to challenge a detention decision. 55 F.4th 773, 777-78 (9th Cir. 2022). Recognizing this, Rauda challenged 1252(g) as unconstitutional. *Id.* at 779. *Rauda* does not speak to whether a district court has authority to stay removal collateral to a viable federal claim. *Hamama v. Adducci* began and ended this part of its analysis by asking whether the district court had jurisdiction over that class action claim. 912 F.3d 869, 874-877 (6th Cir. 2018). Because 1252(g) barred jurisdiction over the underlying claim, and that statute was found constitutional, the court lacked authority to enjoin removal of class members. *Id.*

In *Tazu*, the noncitizen challenged the decision to execute removal during the pendency of agency consideration of other applications, but did not raise claims of agency delay or mishandling of those other applications. 975 F.3d at 297. Tazu had never filed the pertinent application, so there had been no agency delay. *Id.* at 295. He challenged only the decision to effectuate removal, which the Court found within the scope of 1252(g). (His detention-based habeas challenge also failed, for reasons explained *supra*.) The Third Circuit did not consider whether a court would

have jurisdiction over the claims raised by Mr. Panton. The Eleventh Circuit considered a similar claim: no unreasonable delay claim was raised, because the application was just being filed. *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021).

The Court need not find that courts have authority to stay removal in every circumstance. Its analysis should begin with jurisdiction over the claim. In the cases cited by the Government, a stay of removal was not sought ancillary to viable claims, but as the sole basis for court action. Mr. Panton raises claims over which the Court has authority. The authorities cited in opposition are unresponsive to these claims, or to the ancillary request for a temporary protective order.

## II.     Mr. Panton Will Likely Prevail on the Substantive Merits.

The Government primarily challenges the Court's authority over this action, and its power to stay removal, but it offers little in defense of its actions in this case. Each of the Government's actions in this matter have been unlawful.

### A.  Revocation of Supervision

The Government did not revoke Mr. Panton's supervision under 8 C.F.R. § 241.4(*l*)(2). *See* Resp. Mem. 7 & n.3. It has not contended that Mr. Panton violated the conditions of supervision, governed by § 241.4(*l*)(1).

First, the Government was invoking § 241.4(*l*)(2), which confers revocation authority on two individuals: the Executive Associate Commissioner and, where "circumstances do not reasonably permit referral [to him]," a district director may revoke release, on a finding that it "is in the public interest." *Id.*[2] Yet the Field Office Director, Mr. William Joyce, did not purport to

---

[2] The reference to the district director means, in this context, the ICE field office director. 8 C.F.R. § 1.2 ("district director" defined to include, inter alia, "field office director").

9

revoke Mr. Panton's supervision. Rather, the revocation order was signed by a subordinate officer, Mr. Alberto Morales, Jr. Tab 10-11. This alone shows failure to comply with the regulation.

Second, the regulations require the district director to consider whether revocation of supervision is "in the public interest." The revocation decision nowhere purports to do so. To the contrary, DHS says that Mr. Panton is to be "kept in the custody of ICE," hardly acknowledging that Mr. Panton had been *out* of custody, reporting faithfully, for years. Resp. Mem. Tab 10-11. Nor did it acknowledge countervailing equities. *Id.*[3]

Third, the agency failed to follow its rules affording Mr. Panton an opportunity to respond. The agency purported to give Mr. Panton an "informal interview," citing 8 C.F.R. § 241.4(*l*) as authority. The informal interview process is found at 8 C.F.R. § 241.4(*l*)(1), not (*l*)(2). To the extent that these procedural rules apply to (*l*)(2) revocations, regulations allow the noncitizen to "respond to the reasons for the revocation." Since the revocation never addressed the most significant question—whether revocation was "in the public interest"—no response to that was offered. DHS's implementation suggests that the procedure was mere charade. Mr. Morales, who signed the Notice of Revocation (contrary to regulation), was not the officer who solicited the informal response from Mr. Panton, nor is there any indication that Mr. Morales ever considered Mr. Panton's response. See 10-11.

---

[3] Even if the Court were to consult other documents issued by DHS in close proximity in time, none of them consider whether revocation is in the public interest. The closest DHS comes is in the denial of deferred action, Resp. Mem. Tab 10-10, where the Field Office Director decided that "there are no compelling factors to warrant a favorable exercise of discretion" to grant deferred action. Id. But the regulations do not require "compelling factors" to decline to revoke supervision, but rather a finding that it is in the public interest to *revoke* release.

Finally, this process violated Mr. Panton's right to be represented. The regulations allow noncitizens to be represented, subject to limitations not pertinent here. 8 C.F.R. § 292.1. DHS knew Mr. Panton was represented: he appeared with counsel, who filed appearances and submitted documents on his behalf. But DHS apparently conducted its "informal" interview with Mr. Panton alone, without allowing his attorneys to make arguments on this point.

Mr. Panton's earlier filing cited numerous district courts ordering release based in part on failure of DHS to follow its own procedures for revoking release. *See* Pet. Memo of Law 12 (citing cases); *see*, *e.g.*, *Rombot*, 296 F. Supp. 3d 387-88. The Government has offered no response to any of that authority.

### B. Unreasonable Delay in Adjudicating the Motion to Reopen and the U Visa

The Government has chosen not to respond to the merits of Mr. Panton's claims of unreasonable delay. The only arguments made go to whether Mr. Panton can show irreparable harm from any violations. Irreparable harm is addressed in the next section.

### III. Irreparable Harm

The Government argues that Mr. Panton will not be entirely precluded from seeking reopening of his removal proceedings or a U visa, if he is removed. Resp. Mem. 19. Mr. Panton attempted to explain, at length, how his removal would irrevocably affect adjudication of those matters. Pet'r's Mem., Dkt. 3-1 at 21. In particular, while a U visa applicant may pursue U visa relief from abroad, applicants abroad may not access the "bona fide" determination procedure afforded by Congress. 8 U.S.C. § 1184(p)(6). As to U visa applicants within the United States, the agency assesses (albeit slowly) whether applicants can meet the bona fide standard for their applications. If they meet that standard, they may access work authorization and protection from removal while their application remains pending. The Government ignores this point.

The Government further claims that even if Mr. Panton is precluded from seeking that remedy, barring him cannot count as irreparable harm because Mr. Panton has "no protected interest" since relief is discretionary. This is both wrong and irrelevant. In this circuit, precluding the opportunity to seek discretionary relief can be a due process violation. *United States v. Copeland*, 376 F.3d 61, 72 (2d Cir. 2004) (emphasizing the "distinction between a right to seek relief and the right to that relief itself," rejecting proposition that "because the grant of ... relief is itself discretionary, the denial of a ... hearing cannot be a fundamental procedural error") (citing *St. Cyr*, 533 U.S. at 307-08). The point is also irrelevant: the Government cites no authority for the proposition that a deprivation cannot be irreparable unless it qualifies as a liberty interest.

Second, the Government discounts Mr. Panton's medical circumstances because it sees only a "possibility" of harm. Resp. Mem. 20.[4] It argues that any harm is not irreparable, because (it claims) any harm is only a "possibility" that it could be dangerous or life-threatening. Resp. Mem. 20. Again, the Government cites no authority to say that horrific pain and suffering is not irreparable unless it is life-threatening. The Government says Mr. Panton has not shown a certainty of harm, but the standard is whether irreparable harm is "likely." *Sarr v. Garland*, 50 F.4th 326, 335 (2d Cir. 2022).

The Government does not contest that Mr. Panton will lose his health insurance, will be unable to receive treatment from his medical team, nor that prior to detention, Mr. Panton's medical team had scheduled procedures in the near- and mid-term. Pet. Mem. 23.

---

[4] The Government says that "ICE Health Service Corps ("IHSC") issued a determination that health care specific to Petitioner's medical needs." Resp. Mem. 9. Notably, it does not produce that document, citing only a deportation officer's thirdhand mention of this assessment. This effectively prevents Mr. Panton from responding. That conclusion is wrong, in any event: Mr. Panton would not be able to receive adequate medical care after removal.

12

## IV.     Public Interest

The Government briefly contends that the public interest supports denial because of the interest in prompt execution of removal orders.  Resp. Mem. 21. The Government does not contend that this case involves the heightened interest categories previously identified, such as where a noncitizen is particularly dangerous or has engaged in abuse of process.  *Compare Nken*, 556 U.S. at 436.

The Government does not contend that it currently has a travel document for Mr. Panton, nor that it will be able to effectuate removal in the near term.  Thus, the Government would not *currently* suffer the harm it purports to fear.  Should the Court grant a stay of removal, it will ensure that the Court and Mr. Panton have adequate and timely notice of removal before it happens.  After a stay grant, should Government thereafter obtain documents which would allow removal, the Government could ask the Court to lift the stay at that point.  Mr. Panton has always cooperated with efforts to secure those documents, as a condition of his release.

The Government does not acknowledge that where removal would be "wrongful," or would impose substantial harm, public interest supports a stay grant. *Id.* Here, the merits of the claim "merge" with the public interest.  *Nken*, 556 U.S. at 435. Because the Government's actions have been wrongful, and because it would suffer little inconvenience by a short-term stay order, the public interest supports issuance of the stay.

## CONCLUSION

The Court has jurisdiction to consider the claims advanced by Mr. Panton and should grant his motion to maintain the status quo by staying removal until this Court has an opportunity to assess his underlying Petition.

| | |
|---|---|
| Dated:  April 1, 2025<br>New York, NY | Respectfully Submitted,<br><br>/s/ Charles Roth*<br>**National Immigrant Justice Center**<br>111 W. Jackson Blvd, Suite 800<br>Chicago, Illinois 60604<br>croth@immigrantjustice.org<br>*\*Motion for admission pending*<br><br>/s/Ruben Loyo<br>Ruben Loyo (RL 1254)<br>**National Immigrant Justice Center**<br>111 W. Jackson Blvd, Suite 800<br>Chicago, Illinois 60604<br>rloyo@immigrantjustice.org<br><br>/s/Sarah T. Gillman<br>Sarah T. Gillman (SG 9273)<br>Gillman@rfkhumanrights.org<br>**ROBERT F. KENNEDY HUMAN RIGHTS**<br>88 Pine Street, 8th Floor, Suite 801<br>New York, New York 10005<br>Tel.: (646) 289-5593<br><br>/s/ Sarah E. Decker<br>Sarah E. Decker (SD 5850763)<br>**ROBERT F. KENNEDY HUMAN RIGHTS**<br>1300 19th Street NW, Suite 750<br>Washington, DC 20036<br>Tel.: (646) 289-5593<br>decker@rfkhumanrights.org<br><br>Olivia Abrecht<br>**National Immigrant Justice Center**<br>111 W. Jackson Blvd, Suite 800<br>Chicago, Illinois 60604<br>oabrecht@immigrantjustice.org<br><br>Elizabeth Gibson<br>**National Immigrant Justice Center**<br>111 W. Jackson Blvd, Suite 800<br>Chicago, Illinois 60604<br>egibson@immigrantjustice.org |

COUNSEL FOR PETITIONER

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3485 words.

/s/Ruben Loyo
Ruben Loyo (RL 1254)
**National Immigrant Justice Center**
111 W. Jackson Blvd, Suite 800
Chicago, Illinois 60604
rloyo@immigrantjustice.org

**CERTIFICATE OF SERVICE**

I certify that on April 1, 2025, I electronically filed the foregoing documents and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/Ruben Loyo
Ruben Loyo (RL 1254)
**National Immigrant Justice Center**
111 W. Jackson Blvd, Suite 800
Chicago, Illinois 60604
rloyo@immigrantjustice.org
