NATIONAL
IMMIGRANT
JUSTICE CENTER

111 W. Jackson Blvd.
Suite 800
Chicago, IL 60604

P (312) 660-1370
F (312) 660-1505
immigrantjustice.org

April 4, 2025

*By ECF*
Hon. Katherine Polk Failla
United States District Judge
United States District Court
40 Foley Square
New York, NY 10007

Re: *Panton v. Joyce*, et al., 25-cv-02451

Dear Judge Failla:

We write regarding the above-captioned case, pursuant to the Court's request during the hearing of April 3, 2025.

The Government has indicated that a non-public document, which it did not attach nor seek to lodge, "'re-delegated to Assistant Field Office Directors' and others the 'Authority under INA § 241 [8 U.S.C. § 1231] and 8 C.F.R. Part 241, relating to warrants of removal, reinstatement of removal, self-removal, and release of aliens from detention.'" Dkt. 17. The Government represents that its client "has confirmed" that this putative delegation "includes … authority under 8 C.F.R. § 241.4(l)(2) to revoke orders of supervision." Id.

First, the Government offers no response to the point that the regulations required the Government to consider whether revocation was "in the public interest." Perhaps the Government means to suggest that the "Assistant Field Office Director" (hereinafter AFOD) was not exercising authority of the Field Office Director, his superior in the New York Field Office. The document described by the Government nowhere specifies whose authority an AFOD exercises "under INA § 241," but logic dictates that it must be the authority of his superior. If the nonpublic delegation somehow conveyed to AFODs ("and others") greater authority than that possessed by the AFOD's superior, it would not only be passing strange; it would be implicitly inconsistent with the text of the regulation. Thus, even if the AFOD had some authority to revoke supervision, it could be exercised only on the findings required by regulation, i.e., that the Executive Associate Director was unavailable, and that the "public interest" required revocation.

Petitioner is at a severe disadvantage in responding to a partial quote from a secret document.  From the Government's description, the document seems not to explicitly delegate the authority in question.  If the document explicitly delegated authority over supervision revocation, the Government would presumably have quoted from that portion of the document.  Moreover, if that delegation were clear from face of the document, the Government would have had no need to "confirm[]" the delegation. Further, the title of the document—normally useful to illuminate ambiguity, *see Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 529 (1947)—mentions other subject matters but not revocation of release. Government counsel reports that his client "confirmed" that it includes revocation authority.

The statute governing release on supervision provides that release is "subject to supervision *under regulations prescribed by the Attorney General*." 8 U.S.C. § 1231(a)(3) (emphasis added) (also listing provisions that such regulations "shall include").  The non-public documents described by the Government, which cannot even be shared with the Court, are not regulations: "United States Government regulations appear first in the Federal Register, published five days a week." *Black's Law Dictionary* 156-57 (5th Ed. 1979). Regardless of whether the Department may delegate authority in this manner, such nonpublic non-regulations may not alter the substantive content of the regulations required by statute.

Finally, there was some suggestion during argument that the Government may have made a public interest finding because it is required by the regulation; but longstanding case law precludes the Court from accepting "counsel's post hoc rationalizations for agency action." *FPC v. Texaco, Inc.*, 417 U.S. 380, 397 (1974).  Rather, the agency decision must be assessed "on the same basis articulated in the order by the agency itself." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169 (1962) (citing *Securities & Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

* * * *

The Court asked the parties to address the possibility of an order requiring Mr. Panton's release during the pendency of the habeas proceeding.  Authority to release habeas corpus petitioners during the pendency of their petitions is governed by *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001); *see also Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 153 (2d Cir. 2007); *see also Kiadii v. Decker*, et. al., No.: 18 Civ. 1584 (AT) (S.D.N.Y. March 2, 2018) (Ordering the Release pending the adjudication of the Petition for a Writ of Habeas Corpus by applying *Mapp* to find that extraordinary circumstances warrant release, including health issues); *S.N.C. v. Sessions*, No. 18 CIV. 7680 (LGS), 2018 WL 6175902 (granting *Mapp* release pending adjudication of habeas petition seeking to

enjoin removal).

The standard for obtaining bail or release during a pending habeas is twofold: "[t]he petitioner must demonstrate that the habeas petition raise[s] substantial claims and that extraordinary circumstances exist[] that make the grant of bail necessary to make the habeas remedy effective." *Grune v. Coughlin*, 913 F.2d 41, 44 (2d Cir.1990).

First, Petitioner's arguments are strong.  While *Mapp* only requires a "substantial claim," courts also consider whether a detainee has a "demonstrated likelihood" of prevailing, *Stepney v. Lopes*, 597 F. Supp. 11, 14 (D. Conn. 1984), or whether the likelihood of prevailing is "more than slightly in petitioner's favor." *Richard v. Abrams*, 732 F. Supp. 24, 25 (S.D.N.Y. 1990). As explained above, the Department revoked Mr. Panton's supervision without considering whether that was in the "public interest," despite a finding of rehabilitation and a lack of danger to the community, despite Mr. Panton's history of complying with appointment notices, and despite Mr. Panton's history of service to the community.  And it did so without affording his counsel an opportunity to respond.  Mr. Panton has demonstrated that he is likely to win.

Mr. Panton can also demonstrate "extraordinary circumstances" sufficient to support bail.  First, Mr. Panton's argument in habeas is that his supervision should not have been revoked in the first place, i.e., that he should not be in current detention while the Government pursues removal (with his full cooperation).  Even if the habeas claim is handled expeditiously, a ruling on the merits would normally take weeks at minimum. The case may become moot, if the Government is able to secure travel documents; but at minimum, Mr. Panton would likely suffer all or most of the improper detention before he could obtain merits relief.  That makes this case like *Boyer v. City of Orlando*, where bail was considered appropriate in a case where that petitioner would likely have finished serving his 120 day sentence before the case could be adjudicated. 402 F.2d 966, 968 (5th Cir. 1968). Here, as in *Boyer*, keeping Mr. Panton detained until the Court can decide on the habeas petition will likely frustrate the goals of the habeas petition, because he would suffer unlawful detention until judgment could be rendered.

Second, Mr. Panton has severe health issues, which would independently suffice to support release.  "Severe health issues" are "the prototypical... case of extraordinary circumstances that justify release pending adjudication of habeas." *Coronel v. Decker*, 449 F.Supp.3d 274, 289 (S.D.N.Y. Mar. 27, 2020).  At least one court has ordered release on bail from the same Batavia facility where Mr. Panton is currently held, based on the finding that a detainee was not receiving sufficient medical care due to the size of the facility relative to the medical staff.  *D'Alessandro v. Mukasey*, No. 08CV914RJAVEB, 2009 WL 799957, at *4 (W.D.N.Y. Mar. 25, 2009), modified, No. 08-CV-914 RJA VEB,

2009 WL 10194901 (W.D.N.Y. Mar. 26, 2009), and aff'd, No. 08-CV-914 RJA VEB, 2009 WL 931164 (W.D.N.Y. Apr. 2, 2009).

Mr. Panton, nearly 60 years old, was injured in a car cash.  Due to immigration detention, he already missed a lower back epidural procedure set for March 27, 2025. He also has right knee surgery scheduled by New York based orthopedic surgeon Dr. Steven Struhl. *See* Dkt. 5-11, Exh. 8 at 21-40, Exh. 9. Further, Mr. Panton was—prior to his unnoticed detention by the government—receiving ongoing care from a neurologist to recover from a serious concussion. *Id.* He has been experiencing direct and persistent dizziness and foggy-headedness in detention.  He elaborates on his ongoing medical situation in his supplemental declaration; the Batavia facility has medical staff, but the size of the facility has caused Mr. Panton to not receive full medical care. Pet'r's Supp. Dec., Dkt. 12-1 at ¶¶ 22-27.

For these reasons, Mr. Panton respectfully requests that the Court consider temporary injunctive relief for Mr. Panton in the form of an order granting bail.  We thank for the Court for its consideration.


Respectfully Submitted,                          April 4, 2025
New York, NY

/s/Ruben Loyo                                    /s/Sarah T. Gillman
Ruben Loyo (RL 1254)                             Sarah T. Gillman (SG 9273)
Olivia Abrecht                                   gillman@rfkhumanrights.org
Elizabeth Gibson                                 ROBERT F. KENNEDY HUMAN
Charles Roth*                                    RIGHTS
National Immigrant Justice Center                88 Pine Street, 8th Floor, Suite 801
111 W. Jackson Blvd, Suite 800                   New York, New York 10005
Chicago, Illinois 60604                          Tel.: (646) 289-5593
rloyo@immigrantjustice.org
*Motion for admission pending                    /s/ Sarah E. Decker
                                                 Sarah E. Decker (SD 5850763)
                                                 decker@rfkhumanrights.org
                                                 ROBERT F. KENNEDY HUMAN
                                                 RIGHTS
                                                 1300 19th Street NW, Suite 750
                                                 Washington, DC 20036
                                                 Tel.: (646) 289-5593

cc: Counsel of Record via ECF